## Hedge and Horn's Appeal.

63　273
'157　70

1. In proceedings in equity, for account, &c., there was an answer denying the allegations of the bill, but no replication:—the court without finding a partnership, or decreeing an account, referred the case to a master who heard testimony, found facts and reported an account. *Held* to be irregular, but no exception being taken in the court below, the Supreme Court would disregard the irregularity.

2. The Acts of April 21st 1846, July 14th, 1857, April 14th 1835, June 16th, 1836, relating to appeals from decrees in equity and in the Orphans' Court remarked on.

3. A joint stock company is a partnership, the capital of which is divided or agreed to be divided into shares, so as to be transferable without express consent of all the copartners.

4. An application for shares and payment of the first deposit, does not constitute one a partner, where he had not interfered in the concern.

5. The insertion of such subscriber's name by the secretary in a book of the company, containing a list of the members, is not holding him out to the public as a partner, because he does not thereby acquire a right to a share of the profit.

6. If a subscriber act as a member or director, attend meetings, &c., or otherwise give himself out as a member, he will make himself liable, though there be some want of the necessary formalities or acts of a party to make him legally a member.

7. A partnership is founded in a voluntary contract of the parties, as distinguished from a mere community of interest, which by operation of law, may arise in various ways.

8. A subscription to shares is but an act or declaration of the subscriber to become a partner, and is executory only.

9. The meeting of some of the subscribers to organize their company and enter into the actual relation of members to it, binds none but those who meet.

November 15th 1869.　Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Washington county:* In Equity: No. 170, to October and November Term 1869.

On the 12th of June 1867 Morgan W. Zollars filed a bill against Shadrach Hedge, Christopher Horn, Caleb H. Zollars, A. H. Deaves and thirty-nine others. The bill alleged:—

1. That about April 1865 the plaintiff and defendants formed a voluntary association, called The Keystone Oil Company, to procure land and bore for oil.

2. That the company was composed of 80 shares, the plaintiff owning four shares, C. H. Zollars four shares, Horn and Hedge two shares each, and the remaining shares were held by the other defendants in proportions set out in the bill.

3. That there was to be paid $125 for each share, that thirteen of the defendants have paid the full amount for their shares, and that if the others would so pay there would be sufficient assets to discharge the liabilities of the company.

13 P. F. SMITH—18

[Hedge and Horn's Appeal.]

4. That the company secured a lease of land, purchased machinery and sunk a well, but failed to obtain oil, and since November 1866 have done nothing further.

5. That the company owes the plaintiff $827.50, and other persons about $1066.70.

The prayers were for discovery of the amounts paid by each member; of the disbursements of the funds and of the liabilities of the company; for a receiver; for a settlement of accounts between the members and payments of the sums adjudged against them respectively and for further relief.

C. H. Zollars admitted that he subscribed for four shares, but that by consent of the directors and at his request his subscription was reduced to two shares.

Hedge and Horn answered jointly:—

1. That on the application of Deaves they subscribed for two shares in a company to be formed, but never took any further part in the company, were never informed of any meeting, &c.

2. They denied that they had any shares in The Keystone Oil Company, and averred that they never received any evidence that they were regarded as members of it.

3. They averred that the value of the shares for which they subscribed was $50 each.

4 and 5. They were not informed as to the allegations in these paragraphs.

All the other defendants made default, and the bill as to them was taken as confessed.

No replication was filed to the answer of Hedge and Horn.

The court did not find a partnership nor decree an account. Alexander Wilson, Esq., was appointed master; he heard a large amount of testimony on the questions raised by the bill and answer.

The master, in his report, stated the evidence very much at large, and reported that Hedge and Horn had each subscribed for two shares of the stock and that neither had paid any part of their subscription. He further reported: * * *

"There is no testimony that Hedge and Horn ever did participate in any meeting of the company, but the evidence is plenary that the company was formed; and that a formal organization took place shortly afterward by the election of a president, vice president, secretary, treasurer and board of directors. This was done by the stockholders, as the minutes show, on the 28th day of April 1865.

"Although the want of this formal organization would not relieve the respondents from liability, it shows that prompt 'steps were taken' by the members to carry out the objects of the association. And the evidence is also plenary that 'liabilities were incurred' by the company; undoubtedly incurred on the faith of

[Hedge and Horn's Appeal.]

the subscription of stock. Had Hedge and Horn desired to withdraw from the company, it was their duty to do so promptly before any liabilities had been incurred, or any steps taken toward the prosecution of the work. Hedge and Horn subscribed to the stock, told divers persons that they had taken stock, suffered the company to go on with the work and incur large indebtedness, and they cannot now be permitted to set up the defence that they never received formal notice of meetings, or participated in the formal action of the company. The consideration for their subscriptions was the prospective gains of the association in the venture for oil, and the law does not recognise the doctrine of Hedge that if oil was obtained, he would pay; otherwise he would not." * * *

" So soon as 'a subscription paper, such as this was, becomes complete by the subscription of the stipulated amount of money, the subscribers become an association, united for contributing to a common fund for a common purpose; the subscription of each becomes a contract by each with his fellows, in consideration of similar contracts by them, to contribute to the common fund the amount subscribed by him. But this subscription may be withdrawn before the actual organization and before any liabilities have been incurred on the faith of the subscription." * * *

The master reported an account finding amongst other things that Hedge and Horn owed $250 each; also what was due from each stockholder, the names of the creditors and the amount due to each, the claim of the plaintiff, $507.71, being one.

The report of the master was excepted to and confirmed by the court; who decreed that Hedge and Horn should each pay $250, that the other stockholders pay what was ascertained by the report to be due by them, that the plaintiff and the other creditors be paid their respective claims, &c.

Hedge and Horn appealed and assigned for error: Referring the case to a master without first decreeing an account, decreeing the payment by Hedge and Horn of $250 each, and confirming the master's report.

*D. T. Watson*, for appellants.—There being no replication the answer was to be taken as true: Story's Eq. Pleading, § 877, note 6; Cooper's Eq. 328, 329; Brightly's Eq. §§ 688, 708, 737, and cases cited. An account will be decreed only where there is a fiduciary relation as between partners, &c., not where the relation is merely debtor and creditor: Story's Eq. Pleading, §§ 227, 262, 514, 516. This association was not a partnership as regards those who only agreed to pay subscriptions; the contract should have been executed: Parsons on Partnership 6; Addison on Contracts 725; 1 Parsons on Contracts 145; McCully *v.* Pittsburg and Connellsville Railroad, 8 Casey 25; Pittsburg and Connellsville Railroad

*v.* Graham, 12 Id. 77; Rice *v.* Shuman, 7 Wright 37. On an ordinary contract a bill for account will not lie: Smith *v.* Levaux, 1 H. & M. 123; 1 Story's Eq. I., § 442; Fowle *v.* Lawrason, 5 Peters's R. 495; Strasburg Railroad *v.* Echternacht, 9 Harris 222. The appellants were not partners even as to third persons: 1 Parsons on Contracts 145. The breach of their contract is to be remedied by a common-law action: Rhey *v.* Evansburg Plank Road, 3 Casey 261.

*D. S. Wilson,* for appellee.—Failure *to* file a replication avails nothing after hearing on the merits: Clement *v.* Hayden, 4 Barr 138; Long *v.* Long, Id. 29. Equity has jurisdiction over unincorporated associations: Act of June 13th 1836, § 13, Pamph. L. 789, Purd. 400, pl. 1, art. 5; Foley *v.* Tovey, 4.P. F. Smith 190.

The opinion of the court was delivered, January 3d 1870, by

Agnew, J.—This is a bill in equity, setting forth a partnership, or voluntary association, actually formed, for the purpose of procuring land and boring for oil. The plaintiff, as a partner or member of the association, claims an account, and payment by the delinquent members of the sums alleged to be owing to the company. The principal question raised is, therefore, whether the defendants who appealed were members of the partnership, otherwise they are not liable to account under this bill. It is not an action by the association, against a subscriber for his subscription. If the appellants never became partners, the bill ought to have been dismissed, as to them. The appellants, while admitting that they signed a subscription paper (then being carried around for the purpose of forming a company), for two shares, of $50 each, and not at $125 a share, totally deny their membership as partners, averring that, after writing their names on the subscription paper, they never took any part in the formation of the company, were not informed of any meeting to organize, and never acted with the company as members thereof. This answer was not denied, by replication or otherwise, and the case went to a master, who seems to have acted also in the capacity of examiner, in taking the testimony. The court did not find the fact of partnership, or decree an account, but the whole thing seems *to* have come up on the report of the master, upon the testimony had before him. This was very irregular, but it is unnecessary to decide the case on this ground. Indeed, after a hearing on the merits, without exception in the court below, to the formal defects, as was the case here, we might disregard the irregularity, under the law regulating appeals to this court in equity cases. The Act of 21st April 1846, Purd. 406, pl. 41, declares that appeals in equity from the Common Pleas shall be "in the same manner and upon the same terms as appeals are allowed from the Orphans' Court." By the Act of

[Hedge and Horn's Appeal.]

14th July 1857, Purd. 402, pl. 11, conferring on the several courts of Common Pleas the additional equity powers vested in the Court of Common Pleas and District Court of Philadelphia, the appeal is directed to be upon the same terms and conditions as provided for appeals from those courts. The appeal from the Common Pleas of Philadelphia is directed to be upon the same terms, and with the same regulations provided for appeals from the Orphans' Court: Purd. 405, pl. 35. Upon decrees from the Orphans' Court, the Act of 14th April 1835 provides that the Supreme Court shall "hear and determine the same, as to right and justice may belong, and refer the same to auditors, when, in their discretion, they may think proper;" and the Act of 16th June 1836 directs the Supreme Court, on appeals from the Orphans' Court, "to hear, try and determine the merits of such cases, and to decree according to the justice and equity thereof:" Purd. 769, pl. 50, 51. This brings us at once to the master's report. The master finds, as to these appellants, and it is the utmost the facts reported can prove, that each of them "subscribed for two shares of stock, in the 'Keystone Oil Company,' of the value of $125 each, and that he has not paid any portion thereof." The master, after stating the denial in the appellants' answer, to wit, that they never took part in the formation of the company, and never acted as members of it, finds, as a fact, that there is no testimony that they ever did participate in any meeting of the company, but the evidence is plenary that the company was formed, and that a formal organization took place on the 28th of April 1865. In no part of his report does he state as a fact, or any fact indicating that the appellants became members of the company, or did acts of participation. From the subscription for shares alone, and the fact that the appellants gave no notice that they withdrew from the association, the master draws his conclusion that they were partners, or members, and reports against them for the non-payment of their subscriptions.

The whole case is narrowed down, therefore, to the question, whether a subscription to shares of an unincorporated joint stock association, without more, constitutes the subscriber a member of the association, or partner liable to all the duties and responsibilities of a member. Upon this question we differ from the master, and court below, upon principle and authority. A joint stock company, such as this is, differs, in some respects, from an ordinary partnership. It is defined to be "a partnership whereof the capital is divided, or agreed to be divided, into shares, and so as to be transferable without the express consent of all the copartners." This definition, taken from the statute of 8 & 9 Vict. c. 110, is said by Mr. Parsons, in his work on Contracts, c. 11, p. 144, to be applicable to such companies in this country. He further states, as the result of the authorities, upon the effect of

becoming a subscriber to an intended company, as regards the creation of a partnership between the members, that an application for shares, and payment of the first deposit, did not suffice to constitute one a partner, where he had not interfered in the concern ; and that the insertion of his name by the secretary of the company, in a book containing a list of the members, was not holding himself out to the public as a partner ; and this, on the ground that such person does not thereby acquire a right to share in the profits.   So, on the other hand, if the subscriber interpose and act as a member, or director, or attend meetings, or accept office, or otherwise give himself out as a member, he will make himself liable, even though there be some want of the necessary formalities, or acts of a party to make him legally a member : 1 Parsons on Contracts 145.

Mr. Collyer, in his work on Partnership, p. 626, says, as to what constitutes an actual partner in a joint stock company : that in this, more than in any other kind of partnership, a variety of acts are done before the partnership is actually commenced ; notices are published, prospectuses are distributed, meetings held, officers chosen, deposits paid, scrip receipts given, long before the business is commenced, or the deed of settlement is executed.   Many acts are necessarily done before the full number of intended shareholders are made up.   Hence the mere subscription for stock, and payment of a deposit, and the doing of acts which merely exhibit an intention to become members, do not alone constitute them partners.   Thus far, the contract is merely executory, and it becomes executed and the relation is established only when they evidence the fact by acts of participation.   This, it seems to me, is founded upon good reason, and can stand well in principle.   A partnership is founded in the voluntary contract of the parties, as distinguished from a mere community of interest, which by operation of law may arise in various ways ; and hence, says Mr. Story, in his work on Partnership, § 5, it is an established principle of the common law, that a partnership can commence only by the voluntary contract of the parties.   Now, what is a subscription to shares for the purpose of forming a joint association, to prosecute any work or matter of business ?   When the first subscriber signs his name, he is unquestionably not a partner, for there is no other on the paper ; when the second subscribes, the partnership is not formed, for it is expected that others will subscribe.   When the whole number of shares contemplated have been subscribed, the relation of partnership still is not formed, for until the subscribers enter upon their project nothing is done to effectuate their common purpose. The subscription is but an act, or declaration of the intention of the subscriber to become a partner, and is executory only.   The thing itself yet remains to be done.   Now, the meeting of some, or of many of the subscribers, to organize their company, and

[Hedge and Horn's Appeal.]

enter into the actual relation of members to it, binds none but those that meet. They can speak only for themselves, for not yet being partners, they cannot exercise their power of partners, to bind others as partners.

It is just at this point the error of the master begins. Because other subscribers met and formed a company, he draws the conclusion that all the subscribers not expressly dissenting, were bound. But this was not so, for the subscribers who met were not yet partners, and could not therefore bind those who did not meet. It needed the voluntary consent of the absent subscribers to the contract of partnership, to make them partners. This they never gave, by word or deed, and consequently they never became partners. If these views need any confirmation from our own authorities, they will be found in the following cases, where, though the very point is not ruled, its underlying principle is: Phipps v. Jones, 8 Harris 260; P. & Con. Railroad Co. v. Graham, 12 Casey 77; Strasburg Railroad Co. v. Echternacht, 9 Harris 220; Rice v. Shuman, 7 Wright 37; Edinboro Academy v. Robinson, 1 Wright 210.

Upon the whole case, we are of opinion that no partnership relation existed between the appellants and the other subscribers, and therefore that the bill must be dismissed, as to the appellants; but without any prejudice to the right at law of the company to sue for and recover, upon the contract of subscription of the appellants, if any such right exists.

Bill dismissed without prejudice, and at the costs of the plaintiff in the bill.