# BRADFORD *v*. NATIONAL BENEFIT ASSOCIATION.

---

VOLUNTARY ASSOCIATIONS; JOINT STOCK COMPANIES; PARTNERSHIP; EVIDENCE; INSTRUCTIONS TO JURY; ARGUMENT OF COUNSEL.

1. A joint stock company is a partnership whereof the capital is divided, or agreed to be divided, into shares, and so as to be transferable without the express consent of all the copartners.

2. When articles of agreement of a voluntary association conducting a banking business provided that no member should transfer his stock without the consent of the board of directors, and, in a suit by a depositor against one of the members, after the insolvency of the association, whereby he sought to hold the defendant as a partner, the defense is that he had withdrawn from the company and sold his stock prior to the plaintiff's becoming a depositor,—circumstances, and minutes, and other writings are admissible to show the defendant's participation in the affairs of the bank as stockholder and director, or both, after the defendant claimed to have withdrawn,—especially where certain of these tended to show that the defendant knew and acquiesced in the conduct of the bank's officers in printing his name as a director on printed matter of the bank.

3. Testimony by one holding the proxy of another to vote at a meeting of a voluntary association, as to such other's intention in giving him the proxy, is inadmissible.

4. Where a member of a voluntary association conducting a banking business, after notifying the directors of his withdrawal as a member, directing them to transfer his stock to another person, and delivering his shares of stock to the secretary, on the failure of the directors to transfer his stock as directed, continues to act as a director with knowledge that his name is printed on leaflets of the bank as a director, and votes his stock in person or by proxy, it is not error for the trial court, in a suit by a depositor against such member, after the insolvency of the association, in which suit he is charged as partner, to submit to the jury the question of whether the defendant

D. C.]                    Statement of the Case.

had abandoned his intention to transfer his shares and waived his notice of withdrawal and remained liable as a partner.

5. Where the record, on appeal, shows that a material fact was put in issue by the pleadings, and it is manifest that the fact was not disputed, but was conceded on the trial, its omission from special instructions to the jury, and from the charge of the court, will not constitute reversible error.

6. A special instruction to the jury is objectionable where it makes the court assume a fact, instead of leaving it to the jury; but, where the record shows no evidence contradicting such statement of fact, and it is clear that its assumption did not influence the verdict, its inclusion in a special instruction is not reversible error.

7. A prayer for instruction is properly refused where it segregates testimony as to one fact from the other facts in evidence, and asks the court to say that such segregated fact should be given a certain effect.

8. A prayer for instruction, not supported by any evidence, is properly refused.

9. In an action by a depositor of an insolvent voluntary association which had conducted a banking business, against certain members thereof, seeking to charge them as partners, a statement made by counsel for the plaintiff in his argument to the jury, referring to the conduct of one of the defendants, that "in many States of this Union such conduct would land him in the penitentiary, as it ought to do here," was *held* to be so unjust to such defendant that the trial court might with propriety have interfered, and required counsel to withdraw the remark, but not so prejudicial as to justify this court in reversing the judgment.

No. 1561. Submitted October 13, 1905. Decided December 5, 1905.

HEARING on an appeal by one of several defendants from the judgment of the Supreme Court of the District of Columbia upon a verdict of a jury in an action against such defendants as members of a voluntary association conducting a banking business, to recover the amount of a deposit by the plaintiff in such association.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The National Benefit Association, the appellee, as a depositor with the Capital Savings Bank, which failed November 24,

1902, brought suit to recover the unpaid deposits against James T. Bradford, appellant, and others, as partners, doing business under the name of the Capital Savings Bank.

The appellee claimed that, when it became a depositor, the appellant was a stockholder and therefore a partner in the bank, which was not incorporated. The appellee introduced evidence tending to prove that the appellant, among others, signed articles of agreement which provided, among other things, that the members signing associated themselves together to carry on a banking business under the firm name of the Capital Savings Bank, from October 1, 1888, to until October 1, 1908, the capital stock being $50,000 in shares of $100 each.

Section 12 of the agreement provides that any member of the company may withdraw his funds by giving thirty days' notice, the company reserving the right to postpone payment ninety days after such notice of withdrawal.

Section 16 provides that no member shall transfer his stock or interest in the company to any person other than a member of the company without the consent of the board of directors.

The appellee became a depositor August 5, 1899, and it alleges that a large balance stood to its credit when the bank closed its doors.

The appellant, who was a stockholder, wrote and mailed the following letter, one Williams named therein being also a stockholder:

Baltimore, March 13, 1897.
To the President and Board of Directors of the Capital Savings Bank,

609 F St. N. W., Washington, D. C.

I hereby give notice of my withdrawal as per constitution, as a stockholder in said institution, and direct that you transfer the stock standing in my name to Howard H. Williams, Washington, D. C., and oblige,

Yours truly,
James T. Bradford.
N. W. corner Center and St. Paul Sts.

The shares of stock being transferable only on the books of the company, the appellant delivered the shares to the secretary for transfer, and thereafter received evasive replies from the president and treasurer when he inquired why the stock had not been transferred. The appellant, himself a depositor during twelve years, had $13,000 on deposit when the bank closed its doors. He testified that he understood he had been elected a director, but he never attended a meeting and never consented to act as such. Terrell, the secretary, in 1898, told appellant the board refused to act on his withdrawal; in April, 1902, Terrell saw appellant at a meeting of directors. On October 9, 1899, appellant gave McCary, the cashier, a written proxy to represent appellant at a regular stockholders' meeting. Minutes of a meeting of directors held February 16, 1900, identified by Terrell, secretary, who kept them, recited the presence of appellant, who made remarks concerning a reorganization. At stockholders' meetings on December 6, 1902, appellant's shares were represented by McKinlay, his proxy; appellant's certificates were still in the secretary's possession, and not entered as transferred because the board had refused to so order. Several times appellant protested against such refusal. Williams, who purchased appellant's shares and made a payment thereon, did not complete the negotiation because of the refusal of the directors to make such transfer. Certain leaflets containing the appellant's name as director were in evidence, and Stewart, a depositor, who was anxious, testified that about April, 1902, at the bank, appellant looked over one of these, and remarked that four or five men thereon were worth sufficient to pay all the bank's liabilities. Such was the substance of the testimony on both sides. Upon this conflicting evidence, under the court's instruction, the jury found a verdict for the plaintiff. The appellant, Bradford, was allowed a severance upon his appeal, and the case comes here upon his bill of exceptions.

*Messrs. Lambert & Baker* for the appellant.

*Mr. A. A. Birney* and *Mr. J. Dawson Williams* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

We find no error in the rulings of the learned court below in admitting the evidence objected to. There are seven assignments of error of the court below in admitting testimony.

The testimony on the appellant's behalf tended to show that he had withdrawn from the company and had sold his stock in 1897, that he had terminated his membership and was not liable as a partner to subsequent depositors. On the appellee's part the court admitted subsequent acts and declarations of the appellant, tending to show that he remained a stockholder and acquiesced in his election as a director of the Capital Savings Bank.

Thus, the appellee sought to show that on October 9, 1899, the appellant gave McCary, the bank's cashier, his proxy to represent him at a meeting of stockholders; Terrell, secretary of the bank, who also acted as secretary of the meeting of stockholders and directors, identified the minutes in his own handwriting, and testified that the minutes record the presence and participation of the appellant on February 6, 1900, and on April 9, 1902, in meetings of the bank's directors, and that he was represented by McKinlay at two stockholders' meetings in December, 1902; that certain printed leaflets bearing the appellant's name thereon as one of the directors were circulated by the bank; that circumstances in evidence indicated that appellant had knowledge of such leaflets and of their contents; that the certificates for the forty shares of stock claimed by appellant to have been sold were in Terrell's custody, some signed by appellant for transfer on the book and some unsigned. All such circumstances, minutes, and other writings were clearly admissible to prove the appellant's participation in the affairs of the bank, as stockholder or director, or both, after the time the appellant claimed to have withdrawn, and certain of these tended to show that the appellant knew and acquiesced in the conduct of the bank's officers in printing his name as a director. Such testimony tended to show how the bank's officers and directors, after the appellant's letter of withdrawal, treated the appellant,

and how far he assented to the refusal to transfer his stock, and whether, in fact, he thereafter acted as a director and remained a stockholder. The learned court did not err in admitting such evidence, nor, as claimed in the eighth assignment of errors, did the court err in refusing to permit McKinlay, the proxy of appellant, to testify to appellant's intention in giving him such proxy.

It appears by the record that appellant, in proffering McKinlay to show appellant's intent in being present after April, 1897, at meetings of directors and stockholders, admitted the presence of the appellant at such meetings.

A joint stock company is "a partnership whereof the capital is divided, or agreed to be divided, into shares, and so as to be transferable without the express consent of all the copartners." 1 Parsons, Contr. *144; *Hedge's Appeal,* 63 Pa. 273. The articles of the Capital Savings Bank provided for such transfer, and also provided a method for withdrawal from the company.

The court granted the three prayers of the appellee:

First. The jury was instructed that if the appellant, a stockholder, sent the letter of March 13, 1897, and delivered his certificates of stock, that the directors refused to transfer his stock as he requested, and that appellant thereafter acted as director and stockholder, and in person or by his proxy voted at stockholders' meetings, the appellant is not relieved of liability.

Second. The jury was instructed that if, during the period when the appellee was making deposits in the bank, the appellant acted as a director of the bank, and was to his knowledge held out to the public as such, the appellee should recover.

Third. The jury was instructed that if the letter of March 13, 1897, was sent to the bank officials, but the shares were never transferred, and the appellant continued to act as owner of the shares, and to vote in person or by proxy as owner thereof at stockholders' meetings, the jury could infer that the appellant had abandoned his intention to transfer the shares, and waive his notice of withdrawal, and remain liable as a partner.

These propositions correctly state the law applicable to the

evidence from the appellee's standpoint, and there was no error in granting the appellee's prayers containing them.

Respecting the second instruction, it is to be noted that there was evidence tending to show that the appellant knew his name was printed on leaflets of the bank among its directors. This, with other circumstances tending to show that he was a director, justified the court in submitting to the jury to find whether the appellant, acted as a director, and was to his knowledge held out to the public as such by the bank during the period mentioned. Indeed, if they found that the appellant acted as a director it was not necessary to find the latter fact.

We observe, however, these instructions and the learned court's charge to the jury omit a material element, the indebtedness of the Capital Savings Bank to the appellee. This fact was put in issue by the pleadings. It is so manifest from the record that this material fact was not disputed, but was conceded at the trial, that the omission affords no ground for reversal in this instance.

We also think the clause "there being no evidence of any change in the relations of said Bradford to the bank after such acts as director and shareholder," at the conclusion of the appellee's second instruction, as we have before recited it, is objectionable. It makes the court assume the fact, instead of leaving it to the jury to find the fact, that there was no evidence of any change in Bradford's relations to the bank after such acts. The court responds to the law; the jury to the facts. In this case, however, there appears to have been no such evidence. We are satisfied the fact assumed did not influence the verdict.

We find no error in the refusal of the court to grant the appellant's prayers.

The first asked the court to say, as matter of law, that thirty days after the receipt of appellant's letter of withdrawal, dated March 13, 1897, his liability as partner ceased.

The second coupled with this letter the sale, or attempted sale, of his stock to Williams, with notice to the bank thereof, and asked the court to say, as matter of law, that these two circumstances taken together put an end to the appellant's liability.

The third, assuming said letter and the sale to Williams to have put an end to appellant's liability, ask the court to say, as matter of law, that appellant's proxy to McCary did not *restore* the appellant to membership in the savings bank. This instruction, in addition to assuming the correctness of the erroneous propositions of the first and second instructions, segregated testimony as to one act of the appellant from the testimony as to other acts and declarations of appellants tending to show that the appellant had not ceased to be a member, and asked the court to say that this single act did not *restore* the appellant to such membership.

The fourth asks the instruction that, if the jury find the appellant sent the proxy dated October 9, 1899, unless the jury further find the appellant did so with intent to resume membership and find that the sale to Williams (if made) was rescinded, and the appellee, with notice of these facts, made further deposits upon the faith of the appellant's membership, the appellee could recover only for such further deposits.

The fifth, saying that, if the stock in the appellant's name was not really his, he would not be liable, is not predicated of the evidence in this case.

The learned court below committed no error in rejecting the five instructions asked by the appellant.

The appellant was a stockholder and liable as a partner in this bank to its depositors under conditions. He could have withdrawn by giving notice and by conforming to section 12, already quoted. Thus he would have terminated his membership and liability. He could have obtained, by following section 16, the same relief from liability by transfer of his stock to another member of this joint stock company. It was not necessary for appellant to ask the approval of the bank to his transfer of his stock to Williams, another member. The appellee's letter of March 13, 1897, could not be a withdrawal, however, under section 12, for that section contemplates a settlement to be made with him, and after ninety days the payment of what was due him, and, of course, involves the surrender of his certificates of stock. The letter was, therefore, a direction to transfer his

stock, under section 16, to Williams, a fellow member, who appears by the record to have agreed to purchase the same. The transfer was never made on the books of the company. The appellant did not persist, and his certificate, as the result of the evasion or refusal of the officials of the bank, remained in the hands of Terrell, the secretary. It does not appear that Williams made efforts to complete the sale and procure the transfer of appellant's shares.

Manifestly the court could not say, as matter of law, respecting such inchoate transactions, that what was done by the appellant, or on his behalf, had terminated his membership and his liability as a partner in the banking business. If the relation of the appellant to the joint stock company because of the letter of March 13, 1897, and the delivery of his certificate to the secretary, be, for the purposes of this case, considered a doubtful and uncertain relation, if thereafter at intervals and until the bank closed its doors the appellant acted as a stockholder and as a director by attending the meetings of such, or otherwise suffered himself to be given out to the public as such, thereby he made himself liable as a member to this appellee, a depositor, commencing its deposits in August, 1899. 1 Parsons, Contr. 145.

We have examined the charge of the court below, and believe there was enough therein to remind the jury of the material elements of the appellant's defense to prevent the reversal of the judgment for want of it.

During the argument before the jury, the appellee's counsel reflected upon the appellant, saying that he knew the bank was in failing circumstances, and yet allowed deposits to be made up to a few days before its doors were closed; "in many States of this Union such conduct would land him in the penitentiary, as it ought to do here." This statement was not warranted by the testimony in the case. It is not disputed that the appellant had lived for many years in Baltimore, and that when the bank failed the appellant was a depositor to the extent of $13,000, and as such suffered a loss greater than that of the appellee.

The controversy in this case itself was whether or not the ap-

pellant was a director, or even a stockholder. It nowhere appears that the appellant, doing business in Baltimore, was active in managing the affairs of the Capital Savings Bank. With all the testimony before them, we consider the ardor of advocacy in this instance led appellee's counsel to make a statement unjust to the appellant, yet not so prejudicial as to deprive the appellant of a fair trial.

The Supreme Court said in *Dunlop* v. *United States,* 165 U. S. 498, 41 L. ed. 803, 17 Sup. Ct. Rep. 375: "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."

The court below might have interfered with propriety, and required counsel to withdraw the remark, but we would not be justified in reversing the judgment on account of this incident.

The judgment in this case will be affirmed, and it is so ordered. *Affirmed.*