**TAYLOR et al. v. JAMES et al.**
No. 1139.

Municipal Court of Appeals for the District of Columbia.

Reargued Nov. 28, 1951.

Decided Dec. 14, 1951.

Rehearing Denied Jan. 7, 1952.

James A. Cobb, Washington, D. C. (Carl D. Coleman, Scotti Mayo, William A. Powell and William E. Taylor, all of Washington, D. C., on the brief), for appellants.

James T. Wright, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

This was a suit for the return of a deposit of $500 made toward the purchase of real estate. Named as defendants were the owner-vendor and the broker who received the deposit. A jury decided the case in favor of plaintiffs and this appeal was taken by defendants.

Twenty-one errors are assigned, but most of these revolve around four basic questions: (1) sufficiency of the evidence to support the verdict; (2) variance between pleadings and proof; (3) propriety of questions and remarks by the trial judge; and (4) improper statements and arguments of plaintiffs' counsel.

1. By motion for directed verdict at the end of plaintiffs' case and at the close of all the evidence, and by motion for judgment non obstante veredicto and for a new trial, appellants challenged the sufficiency of the evidence to support a verdict for plaintiffs. That challenge is repeated here in several assignments of error. The trial was a long one and we shall not attempt to repeat the evidence in detail. The emphatic testimony of the two plaintiffs was that defendant broker represented that there were only two trusts on the property whereas it later developed that there were three. Their testimony was equally emphatic that the broker represented that the monthly payments would be "less than $100" whereas it later developed that such payments would amount to $110.50. Their testimony also was that though they spent possibly as much as two hours in the broker's home, most of that time was taken up in general conversation on other subjects, "just stand-

ing, talking about one thing and another," and that the conversation leading to the signing of the contract lasted no more than five minutes. They said that during that short period the broker made the misrepresentations complained of, gave them no opportunity to read the contract, and by repeated urgings "hurried" Mrs. James into signing it. Mrs. James signed alone and the broker himself testified that this was done at his suggestion that one signature would be sufficient and that it would be more satisfactory because Mrs. James would be more readily available in the event changes were to be made in the contract.

The broker and his wife were the only defense witnesses and they contradicted every charge made by plaintiffs. According to them, plaintiffs were given a full opportunity to read the contract and did read it and were fully acquainted with all details as to payments, and there were no misrepresentations of any kind.

The evidence also showed that the two plaintiffs were comparatively uneducated, neither having progressed beyond graded school; that neither had ever seen a real estate sale contract before or had any experience in such matters, while the broker was also a lawyer by profession and formerly acting dean of a law school. It is clear that the evidence on the whole was such that it would have been error to take the case from the jury, because of the factual conflicts on the basic issues.

■ 2. In the course of plaintiffs' case testimony was offered to show that when the sale contract was first tendered to plaintiffs, Mr. and Mrs. James, and when signed by Mrs. James, it did not contain a recital of the amounts, terms and payments under the second and third trusts, and that (in effect) these were inserted after signature. Appellants claim this constituted a fatal variance between allegations and proof. We note that no objection was made to the evidence at any stage of the trial and that there was no effort made to have it stricken. Hence appellants have no right to have it reviewed in this court. Brown v. Rudberg,

84 U.S.App.D.C. 221, 171 F.2d 831; Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 144 F.2d 532; Champ v. Atkins, 76 U.S.App.D.C. 15, 128 F.2d 601; Germaine v. Cramer, D.C.Mun.App., 65 A.2d 573; Firestone Tire & Rubber Co. v. Hillow, D.C. Mun.App., 65 A.2d 338. Moreover this is a matter which could easily have been taken care of by amendment.

■ 3. In several assignments of error appellants take exception to statements made by the judge during the course of the trial and to his participation in the questioning of the two plaintiffs. But since the record shows no objection whatever to any statement or question by the judge,[1] such cannot be complained of on appeal. Brown v. Haas, D.C.Mun.App., 72 A.2d 39. As in almost all civil cases, our decision must be limited to the issues and questions presented at the trial. Nevertheless we have examined the record with care and we have found no improper statements by the judge, no unwarranted interference in the examination of any witness and no suggestion of partisanship in his conduct of the trial.

■ 4. Finally we consider the claim that plaintiffs' counsel made improper arguments to the jury. Here again the record shows no word of objection by appellants. Nevertheless we have considered the matter. Plaintiffs' counsel made two statements to the jury which were not supported by the record. He referred to "the exorbitant price of $15,500 for poor people to pay for a house" when there was no evidence as to the reasonableness of the price and it was not complained of by plaintiffs. He also argued to the jury that the property had later been sold, that the owner had collected her money and that the broker had collected his commission. Having no evidentiary support, these arguments were improper and, if objected to, would necessarily have been stricken. But, as we have seen, counsel made no objection. Hence, as has recently been held by the United States Court of Appeals, the point "was in effect waived." McWilliams v. Lewis, 75 U.S. App.D.C. 153, 154, 125 F.2d 200, 201. Nor was objection made to other arguments of

1. Counsel who argued this appeal did not represent appellants at the trial.

plaintiffs' counsel referring to his personal friendship for the broker and the broker's wife or to his statement that the broker, after drawing up the contract, was "ready for the kill," or to a somewhat imaginative argument as to brokerage practices. It seems to us that while some of these arguments were subject to objection, they were still not of such an inflammatory nature as to have entitled defendants to a mistrial. We think it would be wrong to say that the judge should have intervened and halted the argument on his own initiative.

It should also be noted that after plaintiffs' counsel had concluded his reply argument, he announced that he was "perfectly willing" that defense counsel have an opportunity to reply and the court then asked defense counsel, "Do you have anything further?," to which he replied, "No, your Honor, nothing further," and the judge again asked, "Does either side have anything further?," to which both counsel answered, "No." Thus defense counsel had three opportunities to challenge the arguments now complained of: once by objecting to the arguments when made; again during his own argument; and a third time when the trial court offered him the unusual opportunity to make reply to the reply argument. Indeed defendants had still a further opportunity to object to or overcome the argument now complained of: they could have asked the trial judge to tell the jury in his charge to disregard such parts of the argument as were not based on evidence.

Under all these circumstances, we think we have no right to say that the arguments were so inherently vicious or inflammatory as to taint the verdict, or that the judge committed prejudicial error by not stopping the argument on his own motion. Such would be a judge's duty only in extreme situations. As the Supreme Court has said in Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799, "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." This language was later quoted in Bradford v. National Benefit Association, 26 App.D.C. 268, 277, and still later by us in Meyer v. Capital Transit Co., D.C.Mun.App., 32 A.2d 392, 393.

Appellants rely heavily on two cases in which it was held that the court had a duty of its own motion to stop arguments appealing to passion or prejudice. One is New York Cent. R. Co. v. Johnson, 279 U.S. 310, 49 S.Ct. 300, 73 L.Ed. 706. There, in arguing a negligence case to the jury, plaintiff's counsel charged that the defense had falsely sought to show that the plaintiff was afflicted with syphilis and directed vituperative language against the defense. There the language employed was so violent in nature as not to be at all comparable to the argument in this case. Furthermore counsel in that case made timely objection. In the other case, Union Pac. R. Co. v. Field, 8 Cir., 137 F. 14, 16, an argument was made, based on no supporting evidence, that one of defendant's witnesses traveled to the place of trial on passes and even more violent argument was made on the question of damages. In this connection plaintiff's attorney in the course of his argument challenged opposing counsel "to answer or to refuse to answer how much he would accept to sustain the alleged injury of the plaintiff, and thereby to insinuate a rule of law and a measure of damages which he knew to be erroneous * * *." We note that in this case too there was timely objection to the argument.

We have concluded that there was no error in this connection and that the entire trial was in all other respects conducted fairly and impartially and that the judgment, not being tainted by reversible error, should be affirmed.