**MANHATTAN STORAGE & TRANSFER CO., Inc., a corporation, Appellant,**

v.

**Lora DAVIS and Boston Insurance Company, a corporation, and United States Fidelity & Guaranty Co., a corporation, Appellees.**

No. 1658.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 7, 1955.

Decided Oct. 14, 1955.

Rehearing Denied Oct. 31, 1955.

Paul J. Kasloff, Washington, D. C., for appellant.

J. E. Bindeman, Washington, D. C., with whom Theodore Kligman, Washington, D. C., was on the brief, for appellee Lora Davis.

James A. Willey, Washington, D. C., James A. Crooks, Washington, D. C., also entered an appearance for appellee Boston Ins. Co.

Thomas S. Jackson, Washington, D. C., with whom Louis M. Denit, Martin R. Fain, and Richard A. Bishop, Washington, D. C., were on the brief, for appellee U. S. Fidelity & Guaranty Co.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellee Davis contracted with the Manhattan Storage & Transfer Co., Inc., appellant herein, in September 1951 for the storage of certain household furniture and personal effects. After requesting their return in November 1953 she discovered many items were missing and others damaged. She then filed suit for damages. Appellant admitted the existence of the contract and conceded that when the property was returned certain items were missing. However, it alleged that the contract of storage contained a limitation of liability. Appellant then filed a third-party complaint against the Boston Insurance Company and the United States Fidelity and Guaranty Company under policies in force during the period in which plaintiff's property was in storage. The third-party complaint demanded judgment against the insurance companies in an amount equivalent to any that might be assessed against appellant in favor of plaintiff, and also requested attorneys' fees for failure of the insurance companies to defend the action. Both insurance companies admitted coverage during the period but on various grounds denied all liability. A jury trial was had and at the close of all the evidence the court directed a verdict in favor of the insurance companies. The jury then returned a verdict for plaintiff against appellant.

The evidence revealed that a large quantity of plaintiff's household furniture and personal effects was stored in one of appellant's warehouses in October 1951; that upon receipt of the shipment, a tally-in sheet was prepared showing 39 items, consisting of 12 packed cartons and 27 articles; that this tally-in sheet was the basis for the warehouse receipt later forwarded to plaintiff; that the complete shipment was assigned Lot No. 10677, each item of which was given an individual number and tagged accordingly. When the articles were returned in November 1953 some were damaged, many cartons were half

empty and others contained property that did not belong to plaintiff. It was stipulated that 16 items were not returned. Among the missing articles were an end table, a TV set, and a carton of lamps.

A police officer testified that his records reflected a complaint was made in May 1953 concerning a break-in at appellant's warehouse, but he had no record of a report of stolen goods. No further evidence was introduced which indicated that police authorities were notified of other break-ins.

Appellant's warehouse foreman testified that during this two-year period he visited the warehouse in question generally once a week but on four occasions did so specifically as the result of break-ins. In December 1951, after the first break-in, he discovered that three lots had been tampered with, one of which belonged to plaintiff. He then prepared a written report to Mr. Kressin, president of the company, listing the numbers of these lots. Other break-ins occurred in January 1952, September 1952, and May 1953. On each occasion the witness submitted a similar report to Mr. Kressin reflecting that Lot No. 10677 had been among those tampered with.

The witness testified that after the first break-in he found the doors of the warehouse open and the padlock knocked off; that cartons in Lot No. 10677 were open and that furniture belonging to this lot was lying in the aisle; that pursuant to Mr. Kressin's instructions, he "fixed the merchandise up"; that he restored the furniture to its proper bin and arranged the cartons which had been broken into on the bottom of the pile and the filled ones on top. He testified that plaintiff's lot was again tampered with in the break-in of January 1952; that some of the articles had been removed from the cartons; that some cartons carried no identification tag while others bearing plaintiff's lot number were empty; that the empty cartons which carried no identification were thrown away, and that this same procedure was followed after the break-ins of September 1952 and May 1953.

The witness testified that the warehouse entrance was a double door made of wood and covered with sheet metal; that the locking device consisted of a heavy padlock fastened to a hasp; and that although there was an electric light inside, it was not lit during the evening hours. After each break-in, the only precaution taken at Mr. Kressin's instructions was the replacement of the lock and hasp, except on one occasion when a metal bar was installed to prevent one section of the door from moving. Despite the fact that it would have been possible to check the lots against the tally-in sheets to ascertain the extent of loss on each occasion, the witness was neither instructed to, nor did he do so. He was not told to notify the customers whose lots had been tampered with and he did not do so.

Mr. Kressin testified that there were six burglaries in the warehouse during the period in which the Davis property was stored therein; that a night watchman was engaged to make the rounds of a number of places and he was supposed to visit this particular warehouse three times during the night. After each break-in occurred, the witness sent the warehouse foreman to make an investigation, and when advised the lock had been broken, issued orders for the purchase of a new one. He admitted that during the period in which the Davis property was stored, six break-ins had occurred but gave no explanation for the fact that only four investigative reports were offered in evidence; that he had knowledge in December 1951 that the Davis property had been tampered with but had not notified her. He further testified that he did not direct a check of the tally-in sheets against the property after each break-in because "maybe the customer wouldn't ever come to get his goods". In substance, he gave the same reason for not notifying plaintiff of the damage to her property. Despite the knowledge that plaintiff's lot had been tampered with on six occasions beginning in December 1951, Kressin testified that no reduction was made in the monthly storage charge and admitted that when the remaining property was returned to her, she was billed for all storage items. Plaintiff

had previously testified that when she made inquiry about the missing items at the time her goods were returned, she was informed that they were on another delivery truck.

There was evidence that the United States Fidelity and Guaranty Company issued a warehouse liability policy to appellant through its local agent for the period July 15, 1951, to July 15, 1952, which was cancelled on March 1, 1952, and that thereafter the Boston Insurance Company issued policies covering the period from March 1, 1952, through March 1, 1954. Under these policies the insurance companies, among other things, contracted to pay all sums for which appellant might be liable as a result of loss, destruction or damage to property in certain designated warehouses, as well as the cost of investigating, adjusting or litigating any such claim, provided that notice of the claim, or of any occasion which might give rise to a claim, be given them together with the fullest information obtainable. Lack of compliance with this provision was the defense made by the insurance companies to appellant's claim to the benefits of the policies.

■ Although several assignments of error are made by appellant, we discuss only those essential to the resolving of this appeal. In essence, appellant argues that the action was one for breach of contract and that such contract determines the rights and liabilities of the parties thereto; that the storage contract contained a clause limiting the bailee's liability; and that the trial court erred in submitting to the jury the question of gross negligence, that being an issue peculiar to actions sounding in tort. This argument is without merit inasmuch as the rule in this jurisdiction, often repeated, is that a bailee can limit his liability for goods deposited with him, except for gross negligence, willful act, or fraud.[1] In a case such as this the jury is not given the issue of gross negligence in order for it to be used

in determining the type of damages that might be awarded.[2] Rather, it is given as the governing factor in determining whether the extent of the bailee's liability will be limited to the amount stated in the contract of storage. The finding of gross negligence merely releases the jury from assessing damages in accordance with a pre-existing formula set forth in the contract and allegedly agreed upon by the parties. There was more than ample evidence here to justify a conclusion by the jury that appellant was grossly negligent in the manner in which it cared for plaintiff's property during the period of storage. Cf. Manhattan Co. v. Goldberg, D.C.Mun.App., 38 A.2d 172.

■ Exception is also taken to the manner in which the issue of gross negligence was introduced into the case. In the complaint originally filed there was no allegation of gross negligence on the part of the storage company. Upon the completion of the testimony of appellant's warehouse foreman, counsel for plaintiff made a motion to amend the complaint charging the storage company with gross negligence, whereupon the court ruled that it would defer any action on the motion until the case was concluded. When that point in the trial was reached counsel again requested that the complaint be amended to conform to the evidence. The trial judge inquired of the movant whether he had an instruction on this subject. Receiving a reply in the affirmative, the court stated that this issue could be determined by hearing argument on the instruction. The trial court then proceeded to " * * * overrule motion to amend without prejudice to plaintiff raising such issue of gross negligence by way of prayer for instruction to the jury." Subsequently, the jury was instructed on the issue of gross negligence and the effect that a finding of such negligence would have on the "limitation of liability" section of the contract. From

---

1. Boiseau v. Morrissette, D.C.Mun.App., 78 A.2d 777; Barrett v. Freed, D.C.Mun. App., 35 A.2d 180; Fidelity Storage Co. v. Kingsbury, 65 App.D.C. 69, 79 F.2d

705. See also 8 C.J.S., Bailments, § 26 (c).

2. See District Motor Co. v. Rodill, D.C. Mun.App., 88 A.2d 489.

the statement of proceedings and evidence we can draw no other conclusion but that the trial court in effect permitted the complaint to be amended to conform to the evidence. Code 1951, Supplement III, § 13–301 and Rule 15(b) of the Municipal Court expressly give a trial court such power and we find no fault with the exercise thereof in this instance.

Appellant does not assert that it was surprised by the introduction of evidence on an issue not in the original pleadings, or that a request for a continuance to prepare to meet such issue was denied it. See Hillyard v. Smither & Mayton, D.C. Mun.App., 76 A.2d 166, and authorities cited therein. To the contrary, the evidence of gross negligence to which the pleadings were conformed was introduced through the testimony of appellant's own witnesses, i. e., its president and its warehouse foreman. Plaintiff was not tardy[3] in seeking leave to amend when she did because up to the time of the testimony of appellant's witnesses, she was unaware of the manner in which appellant conducted its business. This ignorance of the factual pattern was due to appellant's desire to keep it so. Plaintiff, becoming fully informed at trial, acted as diligently as could be expected, and the granting of the amendment was therefore proper.

█ Thirdly, appellant argues that the trial court erred in granting each insurance company's motion for a directed verdict on the grounds of insufficient evidence at the close of the trial. While we are well aware that upon such a motion the trial court must construe all of the evidence most favorably to the adverse party and allow him the benefit of all reasonable inferences to be drawn therefrom, it is also basic that "it is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw there-

from would be insufficient to support a different finding." Chicago, M. & St. P. R. Co. v. Coogan, 271 U.S. 472, 478, 46 S.Ct. 564, 70 L.Ed. 1041. Appellant had not only the burden of proving the fact that the two insurance companies had issued policies covering the total period of time plaintiff's goods were in storage and that losses occurred during this period, but it was also incumbent upon appellant to connect each loss, and the extent thereof, to the insurer whose policy was in effect at that time.[4] To this date appellant is unaware of the amount of property stolen or damaged on each break-in. It would have been sheer speculation on the part of the jury to attempt to determine the liabilities between the two insurers and therefore the trial judge properly kept that question from them.

█ Lastly, appellant assigns as error the failure of the trial court to declare a mistrial as a result of a remark made by counsel for plaintiff in the presence of the jury. After appellant had completed its case, Mr. Willey, counsel for the Boston Insurance Company, requested permission to testify. Upon cross-examination by counsel for plaintiff, the witness was interrogated on matter previously testified to by Mr. Kressin. When counsel for appellant objected to a particular question, plaintiff's counsel stated " * * * that the purpose and relevancy of this testimony was to impeach the witness Kressin by showing that Mr. Kressin had lied with respect to his conversation with Mr. Willey." This remark prompted the motion for a mistrial which the court, after sustaining objection to the question, overruled. The jury was then instructed to disregard the comment of plaintiff's attorney.

The language in Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799, has been used on more than one occasion in this jurisdiction in

3. Plummer v. Johnson, D.C.Mun.App., 35 A.2d 647.

4. Appleman, Insurance Law and Practice, § 12093. See also Belland v. American Automobile Ins. Co., D.C.Mun.App., 101 A.2d 517.

disposing of a situation such as this.[5] There the Court said:

"If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since, in the ardor of advocacy and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation."

Although the statement of counsel was improper, we cannot say that it was prejudicial. Gasque v. Saidman, D.C.Mun.App., 44 A.2d 537. Any harm it may have done was immediately remedied by the instruction of the trial court.

We find no error in the record and the judgments should therefore stand.

Affirmed.

5. Taylor v. James, D.C.Mun.App., 85 A.2d 62, 65; Meyer v. Capital Transit Co., D.C.Mun.App., 32 A.2d 392, 393; Bradford v. National Benefit Ass'n, 26 App. D.C. 268, 277.