**A. P. WOODSON COMPANY, Appellant,**

v.

**Frank C. SAKRAN, Appellee.**

No. 1903.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 3, 1956.

Decided Feb. 6, 1957.

William T. Clague, Washington, D. C.,
with whom Allan C. Swingle, Washington,

D. C., was on the brief, for appellant. David Edwin Hammer, Washington, D. C., also entered an appearance for appellant.

Thomas A. Lohm, Wheaton, Md., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellee sued to recover for damage to his home, consisting of the freezing and bursting of the heating radiators and pipes and other incidental damage to the walls, ceilings and floors, allegedly caused by the failure of the home's oil-burning heating system to function due in turn to appellant's failure to deliver fuel oil pursuant to a contract between the parties.

Appellant had furnished oil and repair service for appellee's oil burner for a number of years, dealing with either appellee or his tenant. According to the testimony of the appellee, when a tenant moved out of the residence on the first of November 1954, appellant furnished oil at his request and it was paid for by him; he further testified that on February 2, 1955, he visited the house which was then vacant and discovered that the oil in the tank was low; that as the weather was very cold and the prediction was that it would so continue for several days, he telephoned appellant's oil-delivery department giving the information that the oil in the tank "seem[ed] to be low" and requesting it to deliver oil and that "[t]he man on the telephone at the other end said he would that day." Appellee testified he left for New York the next morning and that when he returned several days later he went to the house and found water leaking around the living room and on the walls and windows and puddles of water on the floor near the radiators; that the radiators were cold and the burner was not running; that he thought the burner was out of order and called the service department of the appellant to send someone to repair it; that its representative came and found nothing wrong with the burner but that there was no oil in the tank; that after some oil was put in the tank the burner started, whereupon appellee discovered that the radiators were leaking; that he then stopped the burner and drained the heating system of water. He employed a plumber to inspect the heating system; the plumber came the following day and according to his testimony he found five radiators frozen and broken; in some radiators pieces had dropped out; some of the feed lines were also frozen and broken; portions of the ceilings had to be replastered and repaired because of the water leaks; that his bill was $459.50; that the prices charged were fair and reasonable; that the bursting of the radiators and pipes was due to the fact that the water in them had frozen. Official weather data in evidence indicated that the minimum temperature on February 2 was 22 and that for the next three days the minimum was considerably lower.

Appellant in its answer denied liability either for breach of contract or tort and alleged that if appellee suffered any damage to his property, it was caused by his own negligence in failing to exercise reasonable care in maintaining it.

In so far as the alleged order placed for oil on February 2 is concerned, the most direct evidence adduced by appellant was the testimony of the manager of its fuel-oil department at the time in question that, other than notations showing calls on days not involved here, the appellant had "no record of any other calls."

The court wrote a memorandum opinion and made findings of fact and conclusions of law. It found that the appellee did order fuel oil from the appellant on February 2, 1955; that such order was accepted by appellant; that the oil was not delivered and that the failure to deliver resulted in the radiators' freezing and cracking; that the amount claimed for painting of the woodwork and cleaning and shellacking the floors was for a refurbishment

which was not a proximate consequence of the breach of contract; it did find that the damages to the heating system and the plastering and papering of the ceilings were allowable damages; that the charges for these items were fair and reasonable and it made a finding against the appellant for the amount of this work. The appeal is from the judgment entered on this finding.

Appellant argues (1) that there was not sufficient evidence to justify a finding that a contract existed between the parties for the delivery of the oil on the day in question; (2) that the damages found by the court were not a proximate consequence of the breach of the contract; and (3) that the court interrupted appellant's counsel so frequently that it made it impossible for him to present his client's case in a clear and orderly fashion.

■ As to the existence of a contract between the parties, appellee testified to placing the order for oil with the appellant by telephone and to its acceptance by the recipient of the call. Appellant's manager's testimony was that the order was not recorded in his company's records. The finding that a contract did exist is plainly not "without evidence to support it" nor wrong because appellant has no record of it.[1] Therefore the decision on this issue was for the trial court.[2]

■ While appellant complains here that appellee sued on one type of contract but proved a different one, it is admitted that this variance was not objected to at the trial level. It is well settled that such allegations of error are not reviewable on appeal.[3]

■ The appellant next challenges the court's finding that the damages were prox-imately caused by the breach of its contractual duty. The appellant was clearly on notice, through the person who on its behalf received appellee's telephone order for oil, that the latter's oil supply at the time was low and of the special circumstance that a weather condition below the freezing point prevailed that day and was forecast to continue for several days. The promise made, to deliver oil on that day, was broken without legal excuse. Responsibility to the appellee thereupon attached to appellant for those damages, sustained as the natural and proximate result of the latter's breach of its contract to deliver oil on the date specified, which it would have reason to foresee as the probable result of such breach when the contract was made.[4] There was sufficient evidence for the court to find that it was because of the failure to deliver the oil, having in mind the below-freezing temperatures and the plumber's testimony as to causation, that the water in the heating system froze causing the radiators and lead pipes to crack and the water to leak over the walls, ceilings and floors. The special facts of a freezing temperature in the community, predicted to last for several days, of which facts the appellant must be deemed to have had reason to know, made such consequences probable at the time the contract was made by the parties, if appellant failed to perform. For all such consequences the appellant "is liable whether they are actually foreseen or not * * *."[5]

■ Regarding the claim of frequent interruptions by the court, we have studied the record and while the court did interpose questions frequently, we do not feel its conduct was such as to require reversal. Other errors assigned by appellant do not merit discussion.

Affirmed.

1. Code 1951, § 11–772.

2. Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9.

3. Taylor v. James, D.C.Mun.App., 85 A. 2d 62, and cases there cited.

4. Pfeffer v. Ernst, D.C.Mun.App., 82 A.2d 763; Restatement of Contracts, § 330.

5. 5 Williston on Contracts (Rev.Ed.1937), § 1344.