CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* COOGAN, SPECIAL ADMINISTRA-TRIX,. ETC.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 268. Argued April 26, 1926.—Decided June 1, 1926.

1. Upon review of a judgment of a state court in a case under the Federal Employers' Liability Act, this Court will examine the record, and if it is found that, as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be re-versed. P. 474.
2. Evidence considered and found to lend no substantial support to the contention that the death of plaintiff's intestate, a brakeman who was run over by a car in a train, which was in process of being made up and coupled, was caused or contributed to by a pipe near the rail, which the railroad company had negligently permitted to remain in a bent condition. P. 474.
3. When circumstantial evidence is relied on to prove a fact, the cir-cumstances must be proved, and not themselves presumed. P. 477.
4. It is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding. P. 478.

160 Minn. 411, reversed.

CERTIORARI to a judgment of the Supreme Court of Minnesota which sustained a recovery of damages in an action brought under the Federal Employers' Liability Act by the administratrix of a brakeman who was killed by an accident.

*Mr. A. C. Erdall,* with whom *Messrs. F. W. Root, O. W. Dynes,* and *C. O. Newcomb* were on the brief, for petitioner.

*Mr. T. D. Sheehan,* with whom *Messrs. S. A. Anderson* and *H. J. Goodwin* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner is an interstate carrier by railroad. William Coogan came to his death at Farmington, Minnesota, July 14, 1923, while employed as a brakeman on one of its interstate trains. Respondent brought this action in the district court of Dakota County in that State under the Federal Employers' Liability Act, approved April 22, 1908, c. 149, 35 Stat. 65, to recover damages for the benefit of the widow and children of the deceased. At the close of all the evidence, petitioner moved the court to direct a verdict in its favor on the ground, among others, that respondent had failed to prove any actionable negligence on the part of petitioner, and that any verdict for respondent would be based upon speculation and conjecture. The motion was denied, and there was a verdict for respondent. A motion for judgment in favor of petitioner notwithstanding the verdict was overruled. Judgment for respondent was given by the trial court; and, on appeal, it was affirmed in the highest court of the State. 160 Minn. 411. The case is here on writ of certiorari. § 237, Judicial Code.

Petitioner contends that the evidence is not sufficient to sustain a finding that any negligence on its part caused or contributed to cause the death.

By the Federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. *Second Employers' Liability Cases,* 223 U. S. 1, 55; *Seaboard Air Line v. Horton,* 233 U. S. 492, 501. The rights and obligations of the petitioner depend upon that Act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the Act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several States. This court will examine the record, and if it is found that as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed. *St. L. & Iron Mtn. Ry.* v. *McWhirter,* 229 U. S. 265, 277; *New Orleans & N. E. R. R. Co.* v. *Harris,* 247 U. S. 367, 371; *New Orleans & N. E. R. R. Co.* v. *Scarlet,* 249 U. S. 528.

Petitioner's train 92 was made up at the Farmington yard by a switch crew shortly after seven o'clock in the morning. Deceased was the rear brakeman of the road crew which was to take the train to Austin. He was killed before the train was ready to start. There was no eye witness, and the case depends on circumstantial evidence. The tracks in the yard run east and west. The most northerly is the main line track; and, commencing with that one, the others are numbered consecutively 1, 2, 3, etc. Cars were taken from other tracks and put upon track 1 to make up the train. The caboose was kicked—that is, detached from the engine in motion and sent by momentum—east to a place where it was stopped by deceased who rode and controlled it by handbrake. Two cars were in like manner put upon that track. They were controlled by a brakeman of the switch crew at the handbrake on the east

car, which coupled automatically to the caboose. Deceased was then standing on the ground beside the caboose. That was the last time he was seen before the accident. Similarly nine or ten more cars were sent east on track 1, and under control of the same brakeman were coupled to the others. And then three or four cars—making up all that were to go in the train—were moved east on that track attached to the engine until they came into contact with the cars already there. Then the engine was stopped to discover whether the coupling made. It was found that it had; and, in order to clear the switch, the engine moved all the cars east about two car lengths—66 to 80 feet. Then the switch engine was detached. Immediately the road engine came and was coupled to the cars. The air hose was coupled between the engine and the first car. But it was found that the air line was open at some other place. The brakeman of the switch crew walked east along the south side of the train and coupled the hose at the east end of the last cut that was set in. After that, and while going toward the rear, he found the body of deceased. It was near the west end of the second car from the caboose, and was lying parallel with the track outside the south rail and on or at the ends of the ties. There were indications on the ground sufficient to show that he had been between the rails of the track; that he had been run over by the east truck of the car next to the caboose; that his left leg and left arm had been crushed between wheel and rail, and that his body had been dragged about 15 feet. There was evidence to support respondent's contention that it was the duty of deceased to couple the air hose, and that prior to the accident all couplings had been made except that made by the brakeman of the switch crew and the one at the caboose.

The breach of duty relied on is this. About 12 inches south of the south rail of the track, and fastened to the ties by clamps and spikes, there was an air pipe line ex-

tending about 800 feet. It was installed three or four years before the accident. At the time of the accident, a stretch of the pipe line about 15 feet in length had been loosened and bent three or four inches toward the rail and upward leaving a space of from three and one-half to four inches between it and the ties. It had been in that condition for some months. The evidence is sufficient to warrant a finding that there was a breach of duty in this respect. But the precise question for decision is whether the condition of the pipe caused or contributed to cause the death of deceased. The east end of the part so loosened and bent was about 15 feet west of the place where the body of deceased was found. Respondent argues that a brakeman, going in from the south side to couple the hose between the caboose and rear car, naturally would step inside the south rail with his right foot, leaving his left foot between the rail and the air pipe line. As to that the evidence is in conflict, but it will be taken to be sufficient to sustain the contention. The shoes worn by deceased at the time of the accident were received in evidence. The outside of the counter of the left shoe was scratched and showed a marked rounding depression parallel with the sole and just above the heel. This condition was first noticed some days after the accident. In the meantime the shoes had been left in a garage and no attention was given to them. The depression in the counter was not so clear at the trial as when first noticed. The foregoing indicates the substance of all the evidence bearing on the cause of death.

The case was tried, and respondent supports the judgment, on the theory that when the switch engine stopped after the last coupling deceased went between the caboose and car to couple the air hose; that he stepped between the rails with his right foot leaving his left foot outside the south rail and between it and the pipe line; that, stooping to reach the air hose, his left foot slipped back-

ward under the bent pipe; that, before he had time to make the coupling, the cars were started backward in the movement to clear the switch; that, when he attempted to straighten up, his left foot was caught under the pipe and he was forced backward, run over and killed. It follows that, unless the evidence is sufficient to warrant a finding that the death resulted from the catching of deceased's left foot under the bent part of the pipe line, the judgment cannot be sustained. As there is no direct evidence, it is necessary to determine whether the circumstances are sufficient to warrant a finding of that fact. Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved, and not themselves presumed. *United States* v. *Ross,* 92 U. S. 281, 284; *Manning* v. *Insurance Co.,* 100 U. S. 693, 698. Assuming it was the duty of deceased to couple the air hose, it was necessary for him to go between the cars to do so. He was standing by the caboose when the first cut came in. The air hose coupling might have been made then or at any time after that. It was not made, and it is left to be inferred that he postponed effort in that direction until after all the switching had been done and until the engine had hold of the string of cars. And then it must be inferred that he went between the cars in the manner claimed—his right foot between the rails leaving his left foot outside where, it is argued, it was caught under the bent pipe.

The " rounding depression " on the counter of the shoe is not sufficient to bridge the hiatus in the evidence. It is not shown when or how that depression was made. The condition of the shoe before the accident is not disclosed. A number of days elapsed before it was noticed; and it is not shown that in the meantime care was taken to keep it in the same condition or that the depression was not made after the accident. Even if the appearance of the shoe and other circumstances are sufficient to

justify an inference that the depression might have been made by the bent pipe, it cannot be said that they constitute any reasonable support for a finding that it was so made. And, assuming that the depression on the shoe counter was made by contact with the bent pipe, there is nothing to indicate whether it was made at the time deceased was knocked down or later while he was being dragged. But there is nothing to show that the pipe had any connection with the accident. The fact that deceased was run over and killed at the time and place disclosed has no tendency to show that his foot was caught. One between cars coupling the air hose is very liable to be run over if the train is unexpectedly moved. A finding that his foot was not caught under the pipe is quite as consistent with the evidence as a finding that it was.

It is the duty of the trial judge to direct a verdict for one of the parties when the testimony and all the inferences which the jury reasonably may draw therefrom would be insufficient to support a different finding. *Baltimore & Ohio R. R. Co.* v. *Groeger,* 266 U. S. 521, 524. When the evidence and the conclusions which a jury might fairly draw from the evidence are taken most strongly against the petitioner, the contention of respondent that the bent pipe caused or contributed to cause the death is without any substantial support. The record leaves the matter in the realm of speculation and conjecture. That is not enough. *Pawling* v. *United States,* 4 Cr. 219, 221; *Patton* v. *Texas & Pacific Railway Co.,* 179 U. S. 658, 663; *Looney* v. *Metropolitan Railroad Co.,* 200 U. S. 480, 488; *St. L. & Iron Mtn. Ry. Co.* v. *McWhirter, supra,* 282; *St. Louis-San Francisco Ry.* v. *Mills, ante,* p. 344.

*Judgment reversed.*