MARY V. LOVE, as Administratrix, etc., of TIMOTHY A. LOVE, Deceased, with Limited Powers, Respondent, *v.* THE BALTIMORE AND OHIO RAILROAD COMPANY, Appellant.

Fourth Department, March 13, 1935.

*William C. Combs*, for the appellant.

*John Van Voorhis*, for the respondent.

LEWIS, J. Plaintiff has been awarded a verdict against the defendant in a representative action brought by her under the Federal Employers' Liability Act, for the death of her husband. In our consideration of this appeal we are governed by the ruling of the United States Supreme Court that by said act " Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all State laws upon that subject were superseded. *Second Employers' Liability Cases*, 223 U. S. 1, 55; *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501. The rights and obligations of the petitioner depend upon that Act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the Act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several States." (*Chicago, Milwaukee & St. P. R. Co.* v. *Coogan*, 271 U. S. 472, 474.)

The accident in which plaintiff's decedent met his death occurred at Wheatland, N. Y., where a single freight track leads indirectly from defendant's main line and serves a private loading platform within the plant of the Ebsary Gypsum Company. The track enters the building from the west through large double doors. For a distance of 300 feet inside the plant it curves slightly to the north and thence extends straight easterly through the remaining 500 feet within the building. The loading platform, which is constructed on the north side of the track bordering the inside of the curve, is four feet above the ties and at about the level of the floor

of a freight car. When a standard size car is moved into the building around the curve its straight side is not conformable with the curve of the adjacent platform wall and accordingly the clearance between the south edge of the platform and the north side of the car is reduced on the curve from ten inches at the car ends to six inches in the middle.

At the time of his death plaintiff's decedent was employed by the defendant railroad company as a brakeman. On the morning of February 24, 1932, he was a member of a crew operating one of defendant's local freight trains between the city of Rochester and the village of Leroy, N. Y. Shortly after eleven o'clock the train reached Wheatland where orders required it to pick up a loaded freight car, which was standing on the track within the gypsum company's plant, and leave in its place an empty box car. In the course of the car-shifting operations necessary to accomplish this movement there came a time when a single empty car was standing at the loading platform. In an effort to couple onto this car defendant's engineer, Gavigan, backed into the plant a train of three or four cars with a box car in the lead. The first contact with the standing car failed to engage the couplers. On the second impact the coupling " made," and with all cars joined the engineer then started to back the train slowly to the east along the track. It was at that time an outcry was heard from a point on the track below the platform and a " violent stop " signal was given to the engineer by Hardick, the head brakeman. The train was stopped within three feet and decedent's body was found lying on the north rail under the center of the second box car. It had not been run over, the indications being that death had resulted from a crushing of the upper portion of the body.

No one witnessed the accident and there is no direct evidence as to how it occurred. The decedent was last seen standing upon the loading platform while the car movements were in progress. As the defendant chose to rest at the close of plaintiff's evidence, the case went to the jury upon plaintiff's proof standing alone. The question is, therefore, presented: Does the evidence establish negligence, for which defendant is responsible, which was the proximate cause of decedent's death?

In the absence of any direct proof as to how the decedent met his death, the plaintiff necessarily relied upon circumstantial evidence, which we shall examine in the light of the rule which provides: " Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved, and not themselves presumed." (Chicago, Milwaukee & St. P. R. Co. v. Coogan, 271 U. S. 472, 477.)

Considering first the theory of plaintiff's case, we note the suggestion made by her counsel in his summation to the jury, which is of record before us, that before the accident occurred decedent had gone from the loading platform down to the tracks to adjust a car coupling and had been injured when, in an attempt to avoid the train which "backed up on him there," he was "boosting himself up onto the platform" by stepping into the stirrup of the car and raising himself up by aid of a grabiron and the adjacent platform wall. Counsel also stated he could not tell whether decedent's foot had slipped in the stirrup or was dislodged by a sudden movement of the train. He suggested "something might have caught as he raised himself up a little way, when he was starting to get up there."

Although there is a marked lack of definiteness in this theory, we shall consider the evidence which plaintiff claims both supports it and justified a finding by the jury that negligence by defendant's employees was the proximate cause of decedent's death. By a process of deductions from different parts of the record plaintiff asserts that immediately before the accident Love was the only member of the train crew inside the building. There is also evidence, the competency of which is questioned, that on prior occasions the decedent had been seen down on the tracks adjusting a coupler, after which he had mounted the platform by taking hold of the grabiron of a freight car, putting his foot in the car stirrup and placing one hand against the platform wall. In addition plaintiff stresses the testimony that "couplers don't line up on a curve as well as they do on a straightaway," and that on past occasions when cars failed to couple on the first impact someone had gone down on the tracks to adjust them. On the day of the accident the couplers failed to engage when defendant's train was first backed against the single car standing on the curve, but there is proof that after the accident the couplers were locked together.

These circumstances may support a doubtful inference that at some time before the accident occurred decedent was down on the tracks between the standing box car and the lead car of the train, but it is not proof which will support plaintiff's conclusion that he remained there until the train backed toward the standing car. His body was not found between the cars near the couplers; it was lying under the mid-portion of the box car, which was then the second car of the train, and to the rear of its forward wheels which had not passed over him.

In an effort to account for the fact that decedent's body was found at that location, plaintiff points to evidence that on the day of the accident a coating of plaster dust from floor sweepings had

accumulated along the outer edge of the loading platform, and that after the accident there were arm-shaped, grey dust marks smeared or rubbed over the platform side of the box car under which decedent's body was found. These marks started several feet from the forward or easterly end of the car and three and one-half feet above the floor level; they extended in a descending line back toward the middle door to a point six inches above the floor level and directly above the point where decedent lay. Plaintiff contends that the dust marks were made by decedent's body when it became caught between the dust-covered wall of the platform and the side of the on-coming box car while he was in the act of raising himself to the platform floor, and that after being wedged into that narrow opening his body was rotated about and crushed in such a manner that it finally slipped through the clearance space and fell to the rail below.

This circumstantial evidence does not meet the test of the rule already quoted. The circumstances upon which plaintiff relies to establish a fact have not been proved; they have been presumed. There is no proof that the train backed toward decedent while he was on the tracks, if we assume he did go down to adjust the couplers; nor is there proof that he attempted to reach the platform by aid of the grabiron, stirrup or wall. As to the marks on the side of the box car under which he was found, which one of plaintiff's own witnesses described as " like regular dust marks usually around that plant," there is no proof how long they had been there nor by whom they were made. There is also significance in the lack of proof of any grey dust on decedent's clothes.

To infer that decedent met his death in the manner claimed by the plaintiff is at most an assumption. It rests upon surmise and lacks proof of essential, underlying facts. As stated by Mr. Justice STONE in *Atchison, Topeka & Santa Fe R. Co.* v. *Toops* (281 U. S. 351, 357): " If allowed to sustain the verdict it would remove trial by jury from the realm of probability, based on evidence, to that of surmise and conjecture." It has been said that " circumstantial evidence consists in reasoning from facts which are known or proved, in order to establish such as are conjectured to exist, but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture." (*Ruppert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 90, 93.)

In any view of the record plaintiff has failed to sustain the burden which was upon her to establish that decedent's death resulted directly from the alleged negligence of defendant's employees. " One who claims under the Federal Act must in some adequate way establish negligence and causal connection between this and the injury." (*Atchison, Topeka & Santa Fe R. Co.* v.

*Saxon,* 284 U. S. 458, 459.)    The evidence that defendant's engineer failed to sound a whistle or bell before the train was moved or that Hardick, the head brakeman, in signaling the engineer did not exercise the care which the conditions disclosed by the record demanded, does not satisfy the requirements of the law which is applicable.    In that regard the United States Supreme Court has recently ruled: " Our decisions clearly show that ' proof of negligence alone does not entitle the plaintiff to recover under the Federal Employers' Liability Act.    The negligence complained of must be the cause of the injury.    The jury may not be permitted to speculate as to its cause and the case must be withdrawn from its consideration unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer.' "    (*Northwestern Pacific R. R. Co.* v. *Bobo,* 290 U. S. 499, 502.)

We reach the conclusion that the evidence before us and all inferences which the jury might reasonably draw therefrom do not establish that decedent's death resulted from negligence of defendant's employees.    The verdict favoring the plaintiff was based upon conjecture, not upon proof of facts essential to the award which charged decedent's death to defendant's fault.    The following authorities have led us to that conclusion: *Patton* v. *Texas & Pacific R. Co.* (179 U. S. 658); *Chicago, Milwaukee & St. P. R. Co.* v. *Coogan (supra)*; *Kansas City Southern R. Co.* v. *Jones* (276 U. S. 303); *N. Y. C. R. R. Co.* v. *Ambrose* (280 id. 486); *Atchison, Topeka & Santa Fe R. Co.* v. *Toops (supra)*; *Atchison, Topeka & Santa Fe R. Co.* v. *Saxon (supra)*.

The judgment and order from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur.    Present — SEARS, P. J., TAYLOR, EDGCOMB, CROSBY and LEWIS, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.