14473

WILLIAMSON v. SOUTHERN RAILWAY COMPANY

(191 S. E., 79)

May, 1936.

*Messrs. John W. Sholenberger* and *Gary Paschal,* for appellant,

*Mr. Frank G. Tompkins,* for respondent,

April 27, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On December 11, 1934, about midnight, W. L. Williamson, chief trainmaster of the defendant, Southern Railway Company, on the Columbia Division, was struck and killed by an engine of train No. 52, operated by the defendant, which at the time was engaged in switching cars on a sidetrack at Montgomery, S. C.

At the time of his death, the deceased was engaged in interstate commerce as an employee of the defendant. The plaintiff, as executrix, brought this action under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) in the Circuit Court of Richland County, for the recovery of damages on account of his alleged wrongful death while in the service of the defendant.

The specifications of negligence and willfulness alleged in the complaint are substantially as follows: (a) In backing

an unprotected engine in the darkness of night, without taking proper precautions; (b) in failing to have upon the rear of said engine a proper signal light; (c) in moving the engine without first giving proper warning and signal; (d) in failing to ring the bell on the engine at the time it was moving, in a dark and dangerous place; (e) in failing to have a person on the rear end of the engine; (f) in moving said engine before the trainmen knew of the position of the deceased; (g) in failing to keep a proper lookout on the right of way for the deceased.

There are other specifications, but they are repetitious of those we have just stated.

The defendant's answer duly set up contributory negligence and assumption of risk on the part of plaintiff's testator, as well as a general denial.

The trial resulted in a nonsuit, upon motion of the defendant, which was granted upon the ground that the evidence failed to show negligence, and upon the further ground that the deceased assumed the risks.

The plaintiff appeals to this Court upon several exceptions from the order of nonsuit.

The essential facts are not in dispute.

On the night in question, a freight train of the defendant, composed of 57 cars, and designated as train No. 52, was proceeding from Spartanburg to Columbia. At some point along this route, between the stations of Richtex and Bookman, a car, located in the train eighth from the engine, became disabled by reason of a broken axle. The train crew were unable to repair the damage, so they uncoupled the cars, and the engine proceeded with the first seven cars to Bookman, where the cars were placed upon a sidetrack. From there the engine crew and conductor proceeded to Columbia for the purpose of securing what is known as the derrick equipment, used in clearing up wreckage, and which consisted of four or five cars. While there the wreck was reported to Mr. Williamson, the chief trainmaster.

The testimony shows that it is customary when a wreck occurs on the railroad for an official to go to the place of its occurrence to direct the movements of trains and switching operations, and generally supervise the work of clearing the track. In accordance with this custom, Mr. Williamson accompanied the train crew of No. 52 and the derrick equipment back to the scene of the trouble. The wreck occurred on the main line, and it was necessary that this track be cleared as soon as possible in order to allow the passage of passenger trains Nos. 10, 16, and 17, which were held up until the main line could be opened. The disabled car was repaired and taken to Bookman, and there placed on a sidetrack. Thereafter the train crew were engaged for a considerable length of time in switching operations, after which the engine of No. 52, pushing three cars ahead of it, proceeded to Montgomery, with passenger trains Nos. 10 and 16 following behind. When it reached Montgomery it took the sidetrack so that the passenger trains could proceed on their way on the main line.

In considering the sufficiency of the evidence, we are wholly concerned with what took place with reference to the engine and three cars of train No. 52 on this sidetrack, because it was there that Mr. Williamson met his death. We are not concerned with train No. 17, because it had preceded No. 52, and had gone on its way.

The undisputed evidence is that while the conductor, Mr. Eleazer, was in direct charge of the freight train, No. 52, he was subject to the general control of Mr. Williamson with reference to every move he made respecting whatever operations were necessary to reassemble his train so as to continue on to Columbia. Mr. Williamson, during all of the necessary switching movements, was the superior officer of Conductor Eleazer. Williamson rode back and forth in the cab with the trainmen, and it was understood that when the work was completed he would return to Columbia on train No. 52. When proceeding from the scene of the wreck to the side-

track at Montgomery, Mr. Williamson was told by the conductor that when he reached the sidetrack, he intended to uncouple and leave the three cars at its eastern end, and would then back his engine to Richtex, and couple on to those cars of his train which had been placed there. From Richtex, train No. 52 would then return to Montgomery on the main line, back into the sidetrack from its western end, couple the three cars to the rear end of the train, and thence proceed to Columbia.

The entire movement and prearranged plan was explained in detail by the conductor to the deceased, in all of which he concurred. It was fully understood that the engine of train No. 52, upon which they were riding and which was pushing the three cars ahead of it, would stop, as stated, on the eastern end of the sidetrack at Montgomery, and would be there only momentarily—only long enough to uncouple the cars. Upon reaching the sidetrack about midnight, Mr. Williamson and the conductor alighted from the cab of the engine, and the brakeman, upon his arrival from the switch terminus, uncoupled the engine from the three cars. As determined upon beforehand, the engine and tender of No. 52 were then to back out from the sidetrack for the return trip to Richtex.

Witnesses for the plaintiff all testified that the bell was rung continuously from the time the engine stopped until after it had started again, and that this continuous ringing of the bell was the customary warning and signal to all trainmen that the engine had not stopped for any length of time, but that it had come to rest only momentarily, and would immediately start again. It was further testified by plaintiff's witnesses that it was the established railroad custom and practice during switching operations such as were being carried on, for no one to ride on the rear of the engine or tender, when backing. The brakeman having uncoupled the engine and signaled the conductor, the latter thereupon directed the engineer to "back up and move on."

The last time the deceased was seen, he was standing in the space between the sidetrack and the main line track, three car lengths behind the engine, waving his lantern to passenger train No. 10, which was then passing. The brakeman was the only one who saw him, and he saw him just before he uncoupled the cars. As the engine started backwards, with the tender ahead of it, the conductor climbed aboard, and not finding Mr. Williamson in the cab, and knowing that he was to return with them, directed the engineer to stop. The engine had then progressed slowly, at a speed of about four or five miles per hour, to a point about three car lengths beyond where Mr. Williamson had last been seen, standing in the space between the two tracks. About the same time that the conductor discovered that the deceased was not in the cab, the brakeman, who was riding on the pilot of the backing engine, saw the electric lantern which the deceased had been carrying, some distance behind him in the middle of the track. The engine was stopped, and the body of Mr. Williamson was found between the rails of the sidetrack, over which the engine had just traveled, two or three car lengths to the rear. The deceased had been run over and instantly killed.

The undisputed evidence is that the night was clear and cold, but that the visibility was good; that Mr. Williamson had been in the employment of the defendant for over a quarter of a century, and was an experienced railroad man, was vigorous for his years, mentally alert, and with unimpaired sight and hearing; that it was the practice of trainmen in switching operations, while the train was in motion, to climb aboard and that this was attended with no unusual risk; that Mr. Williamson was well aware of this practice, and had himself been seen to board moving trains.

As stated, there were no eyewitnesses to the actual occurrence. Mr. Williamson when last seen alive was in a place of safety, standing in the space between the two tracks. The plaintiff endeavored to prove that there was no light on the

rear of the engine tender, which was the forward unit on the backing engine. There was, however, a total absence of any testimony to prove this specification of negligence. No witness testified that the light on the back of the tender was not burning, nor did any witness testify that it was burning. The engineer, however, said that the light was properly coupled up.

It is undisputed that during the switching operations, Mr. Williamson had been in and about the engine constantly during the several hours they had been engaged in clearing the track, and the conductor testified that if the light was not burning, the deceased, as trainmaster in charge of the operations, could have and should have called it to the attention of the engineer or other member of the crew, and have had the matter remedied.

The appellant also argues that it was a breach of duty on the part of the defendant to commence the backward movement of the engine without giving warning to the deceased. There was testimony from each member of the train crew, who were the plaintiff's witnesses, that the bell continued to ring, which was a warning to all connected with the engine's movements that it would start immediately. There is no reason to assume that the deceased was not aware of this fact, because, as already stated, he had been fully informed as to the movements of the engine; was an experienced railroad man, and fully cognizant of what this signal meant.

It is further contended that the engineer could have seen the deceased on the track if he had kept a proper lookout. The record is devoid of evidence to the effect that the deceased was on the tract at the time the engine began to move backward. When last seen by the brakeman, the deceased was standing between the two tracks. The engineer testified that he kept a lookout from his position in the cab which was on the outermost side of the track, but that if the deceased was on the track at the time the engine began to move the tender would have shut off his view. Under the un-

controverted evidence, there could have been no reasonable thought or expectation on the part of the engineer or any one of the train crew that the deceased, a trainman of long experience, would move into a place of danger, or would be oblivious of his own safety. They had the right to act on the belief that the various members of the train crew and Mr. Williamson, all of whom knew of the engine's intended movements, would take reasonable precaution to keep out of danger. The engine was backing slowly, in the direction it was agreed upon it should move, and the bell was ringing, so that any ordinary attention on the part of the deceased would have made him aware of its approach, and would have enabled him to step to one side. But, as stated, no one knows how or why or when he got upon the side track. As already adverted to, no one knew that he was on the track, nor that he would step directly in the path of the moving train, if, indeed, he did so. The trial Judge in ordering the nonsuit, and commenting upon the speculative character of the testimony, suggested that the deceased might have suffered an attack of vertigo. This, however, is left to the imagination.

This action having been brought under the Federal Employers' Liability Act is governed by that Act.

The Act of Congress under which plaintiff seeks recovery took possession of the field of liability of carriers by railway for injuries sustained by their employees while engaged in interstate commerce, and supersedead State laws upon that subject. Second Employers' Liability Cases, 223 U. S., 1, 55, 32 S. Ct., 169, 56 L. Ed., 327, 38 L. R. A. (N. S.), 44.

This case is governed by that Act and the principles of the common law as applied in the Courts of the United States. The plaintiff cannot recover in the absence of negligence on the part of the defendant, *Seaboard Air Line Ry. v. Horton,* 233 U. S., 492, 502, 34 S. Ct., 635, 58 L. Ed., 1062, L. R. A., 1915-C, 1, Ann Cas., 1915-B, 475. And, except as specified in Section 4 of the Act (45

U. S. C. A., § 54), the employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees. *Boldt v. Pennsylvania R. Co.,* 245 U. S., 441, 445, 38 S. Ct., 139, 62 L. Ed., 385; *Chesapeake & Ohio R'y. Co. v. Nixon,* 271 U. S., 218, 46 S. Ct., 495, 70 L. Ed., 914. If, upon an examination of the record, it is found that as a matter of law the evidence is not sufficient to sustain the essential findings of fact, the judgment will be reversed. *Chicago, M. & St. P. Ry. Co. v. Coogan,* 271 U. S., 472, 474, 46 S. Ct., 564, 565, 70 L. Ed., 1041; *Toledo, St. L. & W. R. Co. v. Allen,* 276 U. S., 165, 48 S. Ct., 215, 72 L. Ed., 513.

The case of *Toledo, St. L. & W. R. Co. v. Allen, supra,* upon which the trial Judge largely relied in granting a nonsuit, is strikingly similar to this case. The plaintiff in that case was a car checker, and he was injured on the railroad yard while in the performance of his duties. His work required him to be in the yard while switching was being done, and to go from place to place to check and list cars that had been switched and arranged on various tracks for the purpose of making up trains. At the time of the accident he was checking a string of cars which had been placed on track 5, and was between it and track 4. While so engaged, two cinder cars were shunted to track 4, and by their own momentum moved to the place where the plaintiff was struck. The yard was not artificially lighted; it was an ordinary starlight night, without moon. The shunted cars moved at a moderate speed—four to six miles an hour—and made noise enough to be heard for one or two car lengths. They were unlighted and unattended, and no person warned the plaintiff of their approach. Under these facts, the Supreme Court of the United States held that there was nothing to sustain a finding that the plaintiff was in any danger other than such as was usually incident to his employment; or that any member of the crew knew, or had reason to believe, that

he was oblivious of the situation; and that in the absence of knowledge on their part that he was in a place where he was liable to be struck and oblivious of that danger, they were not required to vary the switching practice customarily followed in that yard, or to warn or to take other steps to protect him. The Court further held, in reversing the judgment, that the plaintiff assumed the risk, and that the defendant did not owe him as high a degree of care as that due from carriers to passengers or others going on their premises for the transaction of business; the reason assigned for the distinction being that plaintiff's knowledge of the situation and the dangers connected therewith was at least equal to that chargeable against the defendant.

The facts of the case at bar present a much weaker case for the plaintiff than is shown in the case to which we have just referred, because here the deceased not only knew of the planned movements of the engine, but there is no evidence that there was no light on the rear of the tender. Furthermore, he was warned by the continuous ringing of the bell of the imminent movement of the engine.

The appellant relies very strongly upon the case of *Thornton v. Seaboard Air Line Ry.*, reported in 98 S. C., 348, 82 S. E., 433. In that case the deceased was a car inspector, discharging his duties in a railroad yard, and was killed by a backing switch engine, with a number of cars ahead of it. However, there was testimony tending to show that there was no light on the rear of this train, and no warning of any kind was given of its approach. In the case before us warning was given by the ringing of the bell, and there was no evidence from which it could be reasonably inferred, that the light on the rear of the tender was not burning. Moreover, the deceased knew that the engine was going to back. We do not think that the *Thornton case* is any way controlling. Furthermore, that case was brought under the Federal Employers' Liability Act, and was reversed by the

United States Supreme Court in a memorandum opinion in 238 U. S., 606, 35 S. Ct., 601, 59 L. Ed., 1485.

The appellant contends that while no particular fact or circumstance proved in the case may establish negligence or warrant the inference of negligence, yet when all of the facts and circumstances are considered as a whole they carry conviction, and rely strongly upon the rule stated in *Greenville & C. R. Co. v. Partlow,* 14 Rich., 237: "It may be that no one of the facts would, of itself, warrant the inference, and yet, when taken together, they would produce belief, which is the object of all evidence."

In our opinion, however, there is an absence of evidence tending to support any one of the allegations of negligence, taken singly or as a whole, such as would have justified the trial Judge in·submitting the case to the jury.

In *Western & Atlantic R. R. v. Hughes,* 278 U. S., 496, 498, 49 S. Ct., 231, 232, 73 L. Ed., 473, which was a case arising under the Federal Employers' Liability Act, it is said: "The railroad asserts that the scintilla of evidence rule prevails in Georgia, and argues that the lower Courts erred by applying the local rule in this case. It is true that submission to the jury of contested issues of fact is not required in the federal Courts, if there is only a scintilla of evidence, *Baltimore & Ohio R. Co. v. Groeger,* 266 U. S., 521, 524, 45 S. Ct., 169, 69 L. Ed., 419; that it is the duty of the Judge to direct the verdict, when the testimony and all inferences which the jury could justifiably draw therefrom would be insufficient to support a verdict for the other party, *Elliott v. Chicago, Milwaukee & St. Paul Ry. Co.,* 150 U. S., 245, 14 S. Ct., 85, 37 L. Ed., 1068; *Small Co. v. Lamborn & Co.,* 267 U. S., 248, 254, 45 S. Ct., 300, 69 L. Ed., 597; and that this federal rule must be applied by State Courts in cases arising under the Federal Employers' Liability Act, *Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan,* 271 U. S., 472, 474, 46 S. Ct., 564, 70

L. Ed., 1041; *Gulf, Mobile & Northern R. Co. v. Wells*, 275 U. S., 455, 457, 48 S. Ct., 151, 72 L. Ed., 370; *Toledo, St. Louis & Western R. Co. v. Allen*, 276 U. S., 165, 168, 48 S. Ct., 215, 72 L. Ed., 513 [515]."

In *Turner v. American Motorists Ins. Co.*, 176 S. C., 260, 180 S. E., 55, 56, in which our Court discussed the scintilla rule and the sufficiency of evidence which would warrant a case being submitted to the jury, it was said: "The meaning of the rule is that there must be some *evidence* arising out of the testimony which elucidates the issues of fact, and which enables the jury to form an intelligent conclusion. It does not authorize the admission of speculative, theoretical, and hypothetical views. It does not set aside the rule of force in this State relating to *res ipsa loquitur*, which doctrine does not prevail in this State."

Verdicts cannot be allowed to rest upon mere surmise, conjecture, or caprice. The fact that an injury may have occurred in one of a dozen ways, of course, would not defeat the plaintiff's right of recovery, if the evidence tended to sustain the reasonable probability of the one relied on. In the instant case, however, the causal connection between the defendant's alleged negligence and the death of plaintiff's testator has not been shown.

Furthermore, the evidence is not susceptible of any other reasonable inference than that the deceased assumed the risks. Whatever dangers existed were obvious and must have been fully known and appreciated by him. He was cognizant of the intended movements of the engine, and knew of its prearranged reverse movement. In the absence of proof that the deceased was exposed to some unusual danger by reason of the departure from the practice generally followed, it cannot be held that the defendant was in duty bound to give him any additional warning of. the movement of the engine, other than the ringing of the bell. *Aerkfetz v. Humphreys*, 145 U. S., 418, 12 S. Ct., 835, 36

L. Ed., 758; *Meyer v. Gulf Refining Co.,* 179 S. C., 324, 184 S. E., 796.

The exceptions are overruled, and the judgment of the lower Court affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BAKER concur.

MR. JUSTICE CARTER dissents.

MR. JUSTICE BONHAM disqualified.