31211.  WESTERN & ATLANTIC RAILROAD *v.* GARDNER.

DECIDED DECEMBER 4, 1946.

*Sam J. Welsch, Walton Whitwell,* for plaintiff in error.

*T. J. Lewis, J. G. Roberts,* contra.

MacINTYRE, J.   The special grounds of the motion for new trial are but an elaboration of the general grounds.  Hence, the sole question for our determination is, did the evidence authorize the verdict.

In Lavender *v.* Kurn, 327 U. S. 645 (66 Sup. Ct. 740, 90 L. ed. 692), which was an action under the Federal Employers' Liability Act, it was said: "In action under Federal Employers' Liability Act for death of railroad switch tender, where there was reasonable basis in evidence for inferring that mail hook swinging from side of mail car struck deceased and jury made that inference, factual dispute could not be relitigated in reviewing court and fact that there was evidence tending to show that it was physically and mathematically impossible for hook to strike deceased and showing facts from which it might reasonably be inferred that deceased was murdered was irrelevant on appeal."  It was further stated that, "Where there is reasonable basis in record for jury's verdict, appellate court may not weigh conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury."

We think that there was a reasonable basis in the evidence of the plaintiff upon which to rest an inference upon a premise of fact, and thus to authorize the jury to infer that the negligence of the railroad company was the proximate cause of the plaintiff's injury. In short we think that the testimony of the plaintiff furnished a reasonable basis for the verdict of the jury.   *Williams* v. *Paul F. Beich Co.,* 74 *Ga. App.* 429 (40 S. E. 2d, 92).

"A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the

truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233).

The testimony of the engineer, conductor, fireman, and other witnesses for the railroad company relative to the jerking of the train and to certain statements of the plaintiff were at variance with the testimony of the plaintiff. However, the jury being the sole judges of the credibility of the witnesses were authorized to accept the testimony of the plaintiff in preference to that of the defendant's witnesses. *Waters* v. *Guile,* 234 Fed. 532 (6-7).

"'The opinion of an expert witness is not conclusive upon the jury. Such testimony is intended to aid them in coming to a correct conclusion upon the subject; but the jury is not bound by such opinion, and can disregard it. The jury may deal with such testimony as they see fit, giving credence to it or not.'" *Ocean Accident & Guarantee Corp.* v. *Lane,* 64 *Ga. App.* 149 (12 S. E. 2d, 413).

The local surgeon for the Western & Atlantic Railroad testified: That "I recall, back in August of last year, making an examination of Mr. H. Z. Gardner, the plaintiff in this case. He was sent to me by a representative of the Western & Atlantic Railroad. My examination of him was on August 28th. My examination at that time disclosed he had a bilateral hernia or hernias, one on the right and one on the left . . in the inguinal region. . . I performed that operation, one on each side. I performed one operation on him last September 13th, when I did the right side, and then on the 29th I did the left side. . . It is my opinion these hernias were the result of congenital defect. The term congenital means something you are born with. In my experience I have operated on and repaired a good many inguinal hernias. And from my experience with inguinal hernias and from my examination of Mr. Gardner I say it is my opinion that his were congenital, or that he was born with a weakness there, and not as the result of any strain, or sprain, or jolt. In my experience I have not found any one born with normal structure who had a hernia. . . I said I had never seen a hernia that I thought resulted from a strain or jerk or jolt. Hernias are caused by congenital weakness of structure together with a protrusion of the lining of the abdominal wall out through the inguinal ring; that is generally accepted

in medicine and surgery, in practically all inguinal hernias. As to why it did not appear on this man prior to the time it did, if it did not result from a strain or jerk or jolt—well, it just has to appear some time, and it might have appeared while he was walking down the street, or any other time. . . Hernia is the medical name for such a condition as that, and a lot of people call it rupture, which is just another expression for it."

Under the rule above stated, the jury is not bound by such expert testimony and opinions of the doctor and can disregard it. They seem to have exercised this right and disregarded his expert opinion, and the plaintiff's testimony authorized the verdict. Although his testimony contained some contradictions, there was no abuse of discretion in denying a new trial.

This case was considered and decided by the whole court, as provided by the act approved March 8, 1945, requiring that the full court pass upon cases in which there is a dissent.

*Judgment affirmed. Sutton, P. J., Felton, Gardner, and Parker, JJ., concur. Broyles, C. J., dissents.*

Broyles, C. J., dissenting. The plaintiff introduced no evidence except his own testimony. He testified that he was working as a brakeman on the defendant's freight train which left Chattanooga, Tennessee, about 10 p.m. on August 25, 1944, and arrived at Marietta, Georgia, the next morning at about 8 a.m., where they began switching the cars; that there were some 10 or 12 cars being pulled by the engine, and he was standing on the step of a car which was about 5 or 6 cars from the engine; that the step was about 20 inches above the ground, and the train was moving at about 5 miles an hour when he stepped from the car to the ground, in the performance of his duty; the engine was pulling those 10 or 12 cars, and of course they were "stretched;" and the train did not stop until I had stepped off; when I stepped off of the car-step, I swung my right foot down to "within 6 or 8 inches of the ground," and then stepped off; just as I was stepping off, the engineer gave to the engine a sudden, violent, and unnecessary jerk which caused my right foot to hit the ground "hard," and right after that "I felt a hurting in my groins," but I thought it was "hunger pains" because I hadn't had anything to eat since I left Chattanooga, and I told that to the engineer after I felt the pains, and he gave me some crackers, which I ate; after the jerk I continued my work

with the train until we reached Atlanta, and never told the engineer or any of the train crew about the jerk or of my being hurt when I stepped off of the car; after putting away my train in Atlanta I went to my home and got in bed; then on the next day, Sunday, I just laid around, and on the next day, Monday, I went to my physician, Dr. Shackleford, and he examined me and found I had a rupture, and he told me to report it to the railroad; before going to my doctor I found a knot on my right side; then, after being examined by my doctor, I went to Mr. Phillips, the trainmaster of the railroad and he had me sign a written statement in which "I was asked if I had any strain or did anything on this trip that would cause a rupture, and I said not that I knew of. That is all true, and it was after Dr. Shackleford had examined me and told me that I had a rupture;" when I went to Dr. Ward, the surgeon for the railroad, on August 28, he found that I had a double hernia, one on my right side and one on my left side; he operated on me, and the operations "did not cost me anything, except for the loss of my time, and neither did my hospital bill." I went back to my work on December 13, 1944. If I had had any accident at Marietta, it was my duty to report it to the conductor of the train or to the train master at Atlanta, but I did not report it because I didn't know that I had had an accident; before this jerk of the train, I was in good health and had no hernias.

All of the crew of the train testified that they did not know of any jerk of the train at Marietta, and that the plaintiff did not tell them about it, but merely complained of having "hunger pains" because he had eaten nothing since leaving Chattanooga. Furthermore, the plaintiff in his testimony admitted that the train of 10 or 12 cars when it was running was "stretched," and the undisputed testimony of the train crew was that a stretched train of cars when running could not make any kind of a jerk.

However, the plaintiff testified that there was a jerk, and the jury were authorized to accept his testimony as to that feature of the case, and they were also authorized to accept his testimony that the jerk caused his right foot to hit the ground "hard" as he stepped off the train, and that immediately he felt pains in his groins.

However, the controlling question here presented is, was there any *substantial* or *credible* evidence showing any *causal* connection between the jerk of the train and the plaintiff's hernias?

The plaintiff in his testimony did not say that the jerk of the train and the hard hitting of his right foot on the ground resulted in his hernias; and, being a layman and not a physician, he could not have known whether or not those prior happenings were the cause of his hernias. He could only speculate whether it was a case of "propter hoc" (because of this) or of "post hoc" (after this). But his family physician, being a man of medical science, might have been able to inform the jury whether there was any causal connection between the hernias and the hard hitting upon the ground of the plaintiff's foot—which he himself testified was only 6 or 8 inches above the ground when he stepped off of the train. However, the plaintiff *did not put his doctor on the witness stand,* and gave no reason for his failure to do so. On the other hand, the defendant introduced the testimony of its physician, whose qualifications were admitted by counsel for the plaintiff. That doctor had examined the plaintiff several days after the infliction of his alleged injuries, had operated on him, and had found two hernias. He testified positively that the plaintiff's hernias were "congenital" hernias and that they could not have been caused, and were not caused, by the jerk of the train and the consequent hard hitting of the plaintiff's foot on the ground. However, I concede that under repeated rulings of the Georgia appellate courts the jury had the authority to believe or to reject that expert medical opinion. But, after the jury had rejected it, what then? There remained no evidence whatever, either direct or circumstantial, that authorized a finding that the plaintiff's hernias resulted from the jerk of the train, and the burden was upon him to show by *substantial* and *credible* evidence, and not by a mere scintilla of evidence, that the hernias were caused by said jerk, and he failed to carry that burden. He introduced no evidence except his own testimony. That testimony, while sufficient to authorize the jury to find that the engineer of the train was negligent in jerking the train, absolutely failed to show any *causal* connection between the jerk and his hernias.

While the Supreme Court of the United States has held in many cases (cited in behalf of the plaintiff) that the Federal Employer's Liability Act should be construed liberally in favor of a plaintiff employee, it has also ruled that the employee is not entitled to recover unless he produces *substantial* and *credible* evidence to prove

his case, and that a mere "scintilla of evidence" which leaves the question of his right to recover in the realms of conjecture and guesswork is not sufficient to authorize a recovery. And that court has further held that the Federal rule, requiring the employee to prove his case by more than a "scintilla of evidence," must be applied by State Courts in all cases arising under the Federal Employer's Liability Act. Chicago, Milwaukee & St. Paul Ry. v. Coogan, 271 U. S. 472, 474 (46 Sup. Ct. 564, 70 L. ed. 1041); Louisville & Nashville R. Co. v. Rudder, 39 Ga. App. 513, 514 (147 S. E. 795). The cases cited in behalf of the plaintiff are distinguished by their particular facts from this case.

In my opinion, the verdict in favor of the plaintiff was not authorized by any substantial or credible evidence; and the denial of a new trial was error.