**AUTO TRANSPORT, Inc. et al. v. POTTER.**

No. 14510.

United States Court of Appeals
Eighth Circuit.

July 1, 1952.

Price Shoemaker, St. Joseph, Mo. (Elmer E. Reital, St. Joseph, Mo., was with him on the brief), for appellants.

Gene Thompson, Maryville, Mo. (Ellis G. Cook, Raymond Eckles, Maryville, Mo., and Walter A. Raymond, Kansas City, Mo., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

On February 19, 1951, at about 6:30 p.m., the late Joseph Potter was driving his Chevrolet 1½ ton truck, loaded with coal, south on U. S. Highway No. 71, and was about one and one-half miles south of the town of Clearmont, in Nodaway County, Missouri. The highway at that place was straight and had a little slope to the north. The paved portion was 20 feet in width, and there were shoulders 12 feet wide on each side of the paving. At the same time and place, defendant John Robinson was employed in driving an automobile transport truck (a tractor-trailer assembly) for the defendant Auto Transport, Inc., north on the highway. The overall length of the transport was 45 feet, the tractor itself being 14 feet long, and the width of the vehicle was 8 feet. The transport was carrying four automobiles and weighed about 32,000 pounds. The evening was damp, misty, and "pretty foggy", and visibility was poor. As the two trucks proceeded in opposite directions they came into collision, a fire ensued, and Joseph Potter died in the burning wreckage.

Plaintiff, Maude Potter, the widow of the deceased Joseph Potter, filed her action for the wrongful death of her husband against the transport company and its driver in the Circuit Court of Nodaway County. The cause was thereafter properly removed by the defendants to the United States District Court for the Western District of Missouri, the plaintiff being a citizen of the State of Missouri; defendant Robinson a citizen of Kansas; defendant corporation being organized under the laws of the State of Delaware, and the sum in controversy being in excess of $3,000.

On the trial of the case to the court and a jury, plaintiff recovered a verdict in the amount of $12,000 on which judgment was

entered, and the defendants perfected their appeal to this court.

Appellants contend that the trial court erred in denying their motion for a directed verdict in their favor which was made at the close of all the evidence, and the question for decision is whether the evidence was sufficient to present a submissible case on the issues presented.

In her complaint, the plaintiff alleged that her husband, the deceased Joseph Potter, was driving his truck south on U. S. Highway No. 71 "in a careful and prudent manner" and "that the defendants, in violation of their said duty, and in total disregard of the rights of the deceased, at said time and place, while defendants were so driving and operating said motor vehicle truck, known as a tractor and trailer, then and there failed to use the highest degree of care in the driving and operation of the same and drove and operated the same carelessly, negligently, recklessly, at a high and dangerous rate of speed, on the left hand side of said highway, the same being the West side, or wrong side thereof, without regard for the safety of plaintiff's said husband and others, and did then and there carelessly, negligently, and recklessly drive and operate said motor vehicle truck so as to place the same directly across and at an angle with said highway at said time and place", and that defendant's truck collided with plaintiff's husband's truck, killing him in the collision.

On the trial plaintiff produced no eye witness to the accident but undertook to show by physical facts observed after the occurrence that the defendant's transport had been driven on to the west or wrong side of the road and had then struck decedent's truck and caused the damages for which recovery was sought.

Photographs taken at the scene of the accident showed discoloration of, and damage to, the pavement on plaintiff's husband's proper side of the road. Plaintiff's witnesses, including a truck driver and a member of the Clearmont Fire Department, both of whom arrived at the scene shortly after the collision and before the collided vehicles were pulled apart, described the position the vehicles were then in as follows: The tractor portion of defendant's transport was pointing in a mostly westerly direction, but on a slight angle to the north; the rear wheels of the tractor were about on the center line of the highway, and the tractor practically filled the west half of the pavement; the trailer portion of the transport was pointing north with its left wheels about on the center line of the road; Potter's coal truck was "wedged" or "meshed" or "welded" into the right hand door of the defendant's tractor, the gas tank situated right behind the cab of the tractor and the right rear wheels of the tractor. The decedent's truck was pointed south and very slightly to the east and the radiator and right front fender (i.e., the fender on the west side of the south-going truck) were against the tractor.

Other testimony adduced by the plaintiff was to the effect that the fire coincidental with the collision burned so fiercely that it was necessary to pull the trucks apart in order for the fire trucks that arrived at the scene to fight the fire. This was accomplished with difficulty because they were so "welded" together. There was testimony that one fire truck pulled the Potter truck six or eight feet to the north in such a way that the truck was left in a position more to the east than its position had been when it was in contact with the transport.

■ Plaintiff's testimony when her case was rested, established that the two trucks, after the collision, were both positioned on the west or decedent's proper side of the highway, but the inquiry is not open on this appeal as to whether or not a submissible case had then been made out. Although defendants moved for a directed verdict on the ground of insufficiency of the evidence, they did not stand on their motion, but on its being overruled they proceeded further and adduced evidence in their behalf. By thus proceeding to put on evidence, defendants waived whatever right they may have had under the motion. Capital Transportation Co. v. Compton, 8 Cir., 187 F.2d 844; Boston Insurance Co. v. Fisher, 8 Cir., 185 F.2d 977.

■ The defendants presented a motion for a directed verdict in their favor for in-

sufficiency of the evidence at the close of all the evidence which was overruled, and on this appeal all evidence submitted by both the plaintiff and the defendants must be considered in determining whether or not a submissible case was made.

Three witnesses testified in defendants' behalf. One of these was a truck driver, Robert Moore, who had been travelling north some distance behind the transport. This witness testified that the transport had been proceeding in its proper lane, and then suddenly swerved to the left. Moore described the position of the Potter truck and the transport after the collision and he placed the Potter truck as coming to rest against the right side of the tractor on the east side of the highway.

Sergeant J. W. Whan of the Missouri Highway Patrol arrived at the scene some 45 minutes after the accident. When he arrived, the coal truck had been pulled away from the transport, but the transport itself had not been moved. When measured from the right edge of the trailer and found the rear wheels of the trailer of the transport to be two feet, eight inches west of the east edge of the highway. Since the transport was eight feet wide the measurement would indicate that the lefthand side of the rear of the trailer was west of the center line of the 20 foot road. Whan testified the trailer was sitting in a slightly northwesterly direction and that the tractor was almost at right angles to the trailer and was headed west. Whan also testified that he measured the position of the Potter truck after it had been moved and that the truck at that time was about in the center of the road; the left edge of the truck bed being six feet west of the east edge of the highway, and the right-rear edge of the truck bed being seven feet, two inches east of the west edge of the pavement.

The only living eye-witness to the actual collision was defendant Robinson, the driver of the automobile transport. In his testimony Robinson testified that he first saw the lights from Potter's truck 75 to 150 feet away from him, and that the lights showed that Potter's truck was on the east, or improper side of the highway. Robinson testified that when he saw the lights he slowed his vehicle down until at the time of the collision he was only going three or four miles per hour. He testified that when the deceased's truck was about 20 feet from the transport, he (Robinson), thinking an accident was inevitable, turned "real sharp" to his left. On cross examination, his testimony continued:

"Q. He was coming right towards you on your side of the road? A. That is right.

"Q. And he never changed course and you had to turn? A. That is right.

"Q. And he never changed course until he hit you? A. That is right.

"Q. He went right straight into you? A. That is right.

"Q. From the east side of the center line of that road? A. That is right.

"Q. You were practically stopped when he hit? A. That is right.

"Q. Did you pull him any with you? A. No, sir."

When this testimony of the defendant is considered along with the plaintiff's testimony as to what the marks on the highway and the positions of the vehicles were after the collision, it appears to afford a substantial basis upon which reasonable men may form a rational belief as to the point where and as to how the accident occurred. It may well be that plaintiff's evidence alone did not establish where the respective vehicles were when collision took place, but only where the vehicles came to rest after colliding, yet defendant's testimony that the transport had almost stopped and that the Potter truck came in a straight line towards and struck against the transport truck when that truck was turned to receive the shock almost broadside to its great weight and the vehicles remained wedged together and that the coal truck was not "pulled" [dragged or moved] with the transport, together with the other testimony, tended to establish and to justify a fair inference that the positions in which plaintiff's witnesses located the vehicle were not only the positions when they came to rest but were also the positions in the instant before and at

the time of the collision. The evidence showing that the large heavy truck of the defendant was "practically stopped" or only going three or four miles per hour just before the collision, and that the coal truck did not swerve but came "straight into" defendant's transport when the transport was so positioned as almost to negative movement from the impact, and that the vehicles remained wedged together, differentiate this case from a case in which two cars collide and it is necessary to deduce from the resultant position of the vehicles after colliding, and from those positions alone, just what happened and who was at fault. Lanoix v. Home Indemnity Company of New York, La.App., 13 So.2d 501, 504, was such a case, and there in reversing a judgment which had been rendered in favor of the plaintiff, the Louisiana court stated: "The fact that the cars came to rest at the place and in the manner described above, that is, the Lanoix car entirely on the west side of the center line of the pavement and a part of the front portion of the Ford, on its side, on the same side, is not conclusive that the accident happened at that point, and it does not prove that the respective cars were occupying the west lane of travel prior to and at the time of the collision. We cannot overlook the fact that when the Ford was upright the Ford was in its proper lane of travel." "Due to the antics motor vehicles will commit or do in accidents, it is impossible for us to come to any definite conclusion as to how this unfortunate accident which cost the lives of the four occupants of the two automobiles happened."

In the case at bar the jury could fairly infer from the whole testimony that no "antics" were performed by either vehicle involved and that the vehicles remained at the place and in the position in which the collision occurred.

█ ██ It is not fatal to plaintiff's case that the jury must resort to inferences from established circumstances, no one of which is conclusively probative, in order to conclude who was at fault. Plaintiff may rely on circumstantial evidence, subject only to the condition that "Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved and not themselves presumed". Chicago, Milwaukee & St. Paul Railway Co. v. Coogan, 271 U.S. 472, 477, 46 S.Ct. 564, 566, 70 L.Ed. 1041. It is therefore held that the trial court did not err in concluding that there was substantial evidence to establish the circumstances on which the plaintiff relied.

Then, as stated in Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (a case in which the holding of the Missouri Supreme Court, 354 Mo. 196, 189 S.W.2d 253 in a Federal Employer's Liability case was reversed by the United States Supreme Court), "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

Here the jury could disregard the testimony of eye-witness Robinson (an interested party) that the deceased was on the wrong side of the highway, and accept his testimony that Potter came straight into him and did not swerve, and that the transport did not pull the truck any in the collision. These facts, coupled with the physical facts of the position of the vehicles as testified to by others before they were moved, furnish a basis for the jury's verdict. The jury could find that for some unknown reason defendant Robinson had so operated his tractor-trailer assembly as to completely block the east side of the highway with the trailer itself and to block the

west side of the highway (the deceased's proper side) with the tractor. A collision was then practically inevitable and we cannot say that the jury was not justified in concluding the collision resulted from the defendant's negligence.

The costs of appeal must be taxed to appellants, including the cost of supplemental record necessitated by the incompleteness of appellants' record.

Affirmed.